**James B. DAVIS, Appellant and Appellee,**

v.

**CITY OF GRAPEVINE, Appellee and Appellant.**

**No. 2–05–145–CV.**

Court of Appeals of Texas, Fort Worth.

March 9, 2006.

Laurance L. Priddy, Dallas, for appellant.

Wm. Andrew Messer and Angela S. Gordon, Frisco, for appellee.

PANEL M: HOLMAN, WALKER, and McCOY, JJ.

**OPINION**

DIXON W. HOLMAN, Justice.

Appellant James B. Davis (Davis) appeals the trial court's granting of summary judgment in favor of Appellee, City of Grapevine (the City). The City cross-appeals the trial court's denial of its objection to Davis' summary judgment evidence. In seven points, Davis contends that the trial court erred in granting the motion for summary judgment because the City (1) failed to meet its burden of showing that there are no genuine issues of material fact, (2) failed to prove as a matter of law that Davis could not perform the essential functions of the relevant positions, with or without reasonable accommodations, (3) failed to prove as a matter of law that Davis was not subjected to an adverse employment action, (4) failed to prove as a matter of law that Davis is not legally disabled within the meaning of Chapter 21 of the Texas Labor Code,[1] (5) failed to prove as a matter of law that it offered Davis a reasonable accommodation, (6) erroneously relied on the burden-shifting test set out in *McDonnell Douglas Corp. v. Green*, which has no application to a failure to accommodate claim, (7) has failed to prove that the accommodations that could have been offered Davis were unreasonable as a matter of law, and (8) failed to prove as a matter of law that Davis cannot establish an age discrimination claim. The City presents a single cross-point asserting that Davis' controverting affidavit should be stricken. We affirm in part and reverse and remand in part.

1. The Commission on Human Rights was recently abolished and its powers and duties were transferred to the newly-created Civil Rights Division of the Texas Workforce Commission. *See* Act of May 30, 2003, 78th Leg., R.S., ch. 302, 2003 Tex. Gen. Laws 1279.

Accordingly, we will not refer to Chapter 21 of the Labor Code as the Commission on Human Rights Act. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 377–78 (Tex.2004).

## FACTUAL BACKGROUND

Davis was formerly employed as a fire-fighter by the City. He was diagnosed with multiple sclerosis. Doctor Susan Blue, a neurologist, treated Davis. Doctor Blue sent a letter to the City describing Davis' condition. The letter stated that Davis had a mild difficulty with balance, he would not consistently be able to climb ladders, and he could not consistently be required to drive emergency vehicles. She sent another letter to the City regarding Davis' condition, explaining that although he is able to perform well on many occasions, there could be instances where he would be limited in terms of balance, rapid response ability, and coordination, and therefore, he should be considered disabled in performing his duties as a fire-fighter and paramedic.

Davis asserts that he was forced to resign from working for the City, alleging discrimination due to his disability and age. He filed suit, requesting relief under the Texas Commission on Human Rights Act. *See* TEX. LAB.CODE ANN. § 21.001–.556 (Vernon 1996). He contends that his supervisors refused to reassign him to another position and refused to offer any other accommodation. The City filed a traditional motion for summary judgment, asserting that Davis could not perform the essential functions of his position, he was not subject to an adverse employment action, he was not legally disabled, the City offered Davis a reasonable accommodation, the City had a legitimate, non-discriminatory reason for not creating a new position for Davis, and Davis cannot establish an age discrimination claim. After a hearing, the trial court granted the City's motion for summary judgment and overruled the City's objection to Davis' summary judgment proof. This appeal followed.

## STANDARD OF REVIEW

■ In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

■ When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R. CIV. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex.1997).

■ A defendant who conclusively negates at least one essential element of a

cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

## CONTROVERTING AFFIDAVIT

■ In its cross-point,[2] the City asserts that the controverting affidavit filed by Davis should be stricken because the affidavit, which was written subsequent to Davis' deposition, contradicts prior deposition testimony without providing an explanation for the changes. We will consider the City's cross-point before we consider the propriety of the trial court's granting of summary judgment in order to determine whether the affidavit can be considered as summary judgment proof.

In his affidavit, signed on January 26, 2005, Davis stated that "[w]hen [he] walk[s] fast or [tries] to run, [he] fall[s] down." Davis stated that he had these conditions in the Spring of 2002. The City complains that the statement in the affidavit contradicts a statement Davis made in his deposition, which was conducted six months earlier on July 28, 2004, because during the deposition testimony Davis stated that "walking is okay" during March through June of 2002.

Initially, during the deposition, defense counsel framed the relevant time period to be March through June of 2002. Davis' deposition reveals the following pertinent testimony:

Q Your walking was okay at that period of time. At least the doctors note that you did that without difficulty.

A Yes, walking is okay.

. . . .

Q From that period of time say from June 2002 to today's date have any of those things changed that we've just talked about, all of those basic like functions?

A The dressing, the hygiene activities, the walking, sitting, all those?

Q Yes.

A If I walk fast or run, I'll fall, stumble and fall, but walking in a normal pace, it's okay.

■ It is well established that a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted. *Randall v. Dallas Power & Light Co.,* 752 S.W.2d 4, 5 (Tex.1988); *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 562 (1962). Thus, when a deposition and an affidavit filed by the same party in opposition to a motion for summary judgment conflict, a fact issue is presented that will preclude summary judgment. *Randall,* 752 S.W.2d at 5. However, the City, relying on *Farroux v.*

---

**2.** The trial court's order granting summary judgment included a ruling by the court overruling the City's objection to Davis' affidavit.

The City filed a notice of appeal under Texas Rule of Appellate Procedure 25.1(c), appealing the trial court's ruling.

*Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex.App.-Houston [1st Dist.] 1997, no pet.), contends that the trial court should have assumed that the affidavit was produced solely to avoid summary judgment and should have refused to consider the contradictory portions as evidence.

In *Farroux,* the Houston Court of Appeals held that the conflict between the deposition and affidavit was so disparate as to amount to nothing but a "sham" fact issue. *Farroux,* 962 S.W.2d at 111. In the absence of an explanation for the change in testimony, the court assumed the sole purpose of the affidavit was to avoid summary judgment and merely presented a "sham" fact issue. *Id.* Interestingly, the *Farroux* court cited only one federal court decision to support its opinion and failed even to mention the Texas Supreme Court decisions of *Gaines* and *Randall* that are directly on point and contrary to *Farroux. See id.*

■ Following *Farroux,* many courts of appeals have adopted the sham affidavit doctrine, and we note that there is a conflict among Texas courts of appeals.[3] We will adhere to our precedent and continue to apply the rule set forth by the Texas Supreme Court in *Randall* that when conflicting inferences may be drawn between a party's summary judgment affidavit and his deposition on matters of material fact,

a fact issue is presented. *See Hale v. Pena,* 991 S.W.2d 942, 946–47 (Tex.App.-Fort Worth 1999, no pet.). Therefore, we hold that the trial court did not err in overruling the City's objection to Davis' affidavit. Accordingly, we overrule the City's cross-point.

### APPLICABLE LAW

■ Under the relevant portions of section 21.051,

[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.

TEX. LAB.CODE ANN. § 21.051 (Vernon 1996). Chapter 21 holds employers liable only for discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." *Id.* § 21.105.

One of the purposes behind chapter 21 is to provide for the execution of the policies embodied in Title I of the Americans with

---

**3.** *Compare Trostle v. Trostle,* 77 S.W.3d 908, 915 (Tex.App.-Amarillo 2002, no pet.) (citing *Farroux* and holding that an affidavit which conflicts with deposition testimony may not be used to raise a fact issue with respect to a motion for summary judgment without an explanation); *Burkett v. Welborn,* 42 S.W.3d 282, 286 (Tex.App.-Texarkana 2001, no pet.) (same); *and Eslon Thermoplastics v. Dynamic Sys.,* 49 S.W.3d 891, 901 (Tex.App.-Austin 2001, no pet.) (same), *with Thompson v. City of Corsicana Housing Auth.,* 57 S.W.3d 547, 557 (Tex.App.-Waco 2001, no pet.) (citing *Randall,* expressly rejecting *Farroux,* and holding that if a party provides inconsistent

or conflicting summary judgment proof, that party has created a fact issue for the trier of fact to resolve); *Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.,* 64 S.W.3d 506, 513 (Tex.App.-Corpus Christi 2001, pet. denied) (citing *Thompson* and concluding that any inconsistency or conflict between a party's deposition and affidavit is not a reason to exclude that evidence in a summary judgment proceeding); *see also* Randy Wilson, *The Sham Affidavit Doctrine in Texas,* 66 Tex. B.J. 962, 964–68 (2003) (discussing the split of authority in Texas regarding sham affidavits).

Disabilities Act of 1990(ADA) [4] and its subsequent amendments. *Id.* § 21.001(3); *see Haggar Apparel Co. v. Leal,* 154 S.W.3d 98, 100 (Tex.2004). Because Chapter 21 seeks to promote federal civil rights policy, it is proper to look to analogous federal precedent. *Little,* 148 S.W.3d at 382; *Morrison v. Pinkerton Inc.,* 7 S.W.3d 851, 854 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Accordingly, Texas courts follow federal precedent for guidance when interpreting Chapter 21. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001).

■■■ Generally, to prevail on a discrimination claim under the ADA, a plaintiff must prove (1) that he has a "disability", (2) that he is "qualified" for the job, and (3) that an adverse employment decision was made solely because of his disability. *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir.1996). Here, Davis asserts that he was subjected to two types of adverse employment actions because the City failed to make a reasonable accommodation and because the City constructively discharged him.

### CLAIM FOR REASONABLE ACCOMMODATION

Davis asserts that the trial court improperly granted summary judgment in favor of the City on his claim that the City failed to provide a reasonable accommodation for his disability. In his sixth point, Davis contends that the burden-shifting test as set fort by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) has no application to a failure-to-accommodate claim. We will discuss this point as we set forth the law relating to a claim that an employer failed to make a reasonable accommodation.

### 1. Does the *McDonnell Douglas* Burden–Shifting Test Apply to a Claim that the Employer has Failed to Make Reasonable Accommodations?

The United States Supreme Court, in two decisive cases, has carefully outlined the allocation of the burdens of proof and production that apply to Title VII discrimination cases. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.,* 411 U.S. at 802–05, 93 S.Ct. at 1824–26 (1973); *see also Tex. Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995). Key to the overall resolution of the instant dispute is the Court's holding that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. As the Court explained, however, the intermediate burdens of production alternate between the plaintiff and the defendant and serve to eliminate claims at an earlier stage if no fact dispute exists that requires the court or jury to reach this ultimate question. *Id.* at 253–55, 101 S.Ct. at 1093–95.

■■■ The test set forth in *McDonnell Douglas* requires the plaintiff to first demonstrate a prima facie case of discrimination, and if the plaintiff is successful, the burden of production shifts to the defendant employer to show a legitimate and non-discriminatory basis for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant employer demonstrates a non-discriminatory reason for its employment action, the plaintiff must show that the defendant's proffered reason is merely a pretext. *Id.* at 804, 93 S.Ct. at 1825; *see*

4. *See* 42 U.S.C.A. §§ 12101–213 (2005).

*also Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir.1994) (applying *McDonnell Douglas* test); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990) (same).

For a plaintiff to establish a prima facie case of discrimination based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) that he is an individual who has a disability within the meaning of the ADA; (2) that an employer covered by the statute had notice of his disability; (3) that with reasonable accommodations he could perform the essential functions of the position;[5] and (4) that the employer has refused to make such accommodations. *See, e.g., Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir.2001); *Stone v. City of Mt. Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1284–85 (7th Cir.1996).

Section 12112(b)(5)(A) of the ADA states that "unless [the employer] can demonstrate" an undue burden, it may not discriminate. 42 U.S.C.A. § 12112(b)(5)(A). Likewise, Chapter 21 of the Texas Labor Code mandates that it is an unlawful employment practice for an employer to fail to make a reasonable accommodation, unless the employer "demonstrates that the accommodation would impose an undue hardship on the operation of the business...." TEX. LAB.CODE ANN. § 21.128. Thus, under the ADA and Chapter 21, the employee has the burden to show that the employer failed to implement a reasonable accommodation, and the employer can defend by showing a business necessity or undue burden. *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 681 (5th Cir.1996); *see* 42 U.S.C.A. § 12112(b)(5)(A); TEX. LAB. CODE ANN. § 21.128.

The Seventh Circuit has determined that the *McDonnell Douglas* burden-shifting test is inappropriate in situations where the plaintiff alleges that he was a qualified individual with a disability and his employer has refused to make a reasonable accommodation. *Bultemeyer*, 100 F.3d at 1283–84. The Seventh Circuit reasoned that if the plaintiff proved the elements alleged, he would establish a direct violation of the ADA, and thus, there is no need for indirect proof and burden-shifting. *Id.* The Seventh Circuit's reasoning is consistent with the precedent set forth by the United States Supreme Court, because the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985) (stating that the method of proof set forth in *McDonnell Douglas* ensures that the "plaintiff has his day in court despite the unavailability of direct

---

**5.** This element is sometimes stated as a requirement that the employee prove that he is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodations. *See Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir.1997). This is consistent with the Austin Court of Appeals' determination that in a cause of action alleging failure to accommodate, part of the plaintiff's burden is to demonstrate that he is "otherwise qualified" for the position from which he was excluded. *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 91 (Tex.App.-Austin 1995, no pet.). He can show this in either of two ways: (1) by proving that he can perform all essential job functions without modifications or accommodations; or (2) that some reasonable accommodation by the employer would enable him to perform the job. *Id.* We believe that the element stated above, requiring the plaintiff to prove that with reasonable accommodations he could perform the essential functions of the position, most succinctly and accurately states the elements of the plaintiff's prima facie case.

evidence"). We hold that the *McDonnell Douglas* burden-shifting test does not apply to a claim that the employer has failed to make a reasonable accommodation. Accordingly, we sustain Davis' sixth point.

### 2. Is Davis an Individual with a Disability within the Meaning of Chapter 21?

In his fourth point, Davis contends that he is a person with a disability under Chapter 21 and that the City has failed to prove as a matter of law that he does not suffer from a substantial impairment affecting a major life activity. Davis contends that he is disabled within the meaning of Chapter 21 because his multiple sclerosis substantially limits him in a number of major life activities, including walking, running, lifting,[6] climbing stairs, and working. He asserts that he is substantially limited in walking as compared to the average person because he cannot walk fast without falling down. In addition to being limited in walking, he also contends that he is substantially limited in running because he cannot run without falling down.

The City asserts that Davis was not legally disabled during the relevant time period because his deposition testimony proves as a matter of law that Davis did not suffer a disability or physical impairment that substantially limited a major life activity. The City argues that running is not a major life activity that is "central to daily life." The City further contends that Davis was not disabled because at the time of the alleged adverse employment action, the evidence conclusively proves that Davis could care for himself, perform man-

ual tasks, stand, sit, eat, walk, lift objects (without any lifting restriction), see, hear, speak, read, breathe, learn, drive (around pedestrians and school children), and work full-time, which are all major life activities.

Under Chapter 21, disability means, "with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB.CODE ANN. § 21.002(6). This language tracks the definition of disability under the ADA. *See* 42 U.S.C.A. § 12102(2). Two potential sources of guidance for interpreting the terms of this definition include the regulations interpreting the Rehabilitation Act of 1973[7] and the EEOC regulations interpreting the ADA. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193–94, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002).

▮▮▮▮▮ Merely having an impairment does not make one disabled under the ADA. *Id.* at 195, 122 S.Ct. at 690. An ADA claimant must show that his impairment limits a major life activity. *Id.* "Major life activities" includes functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I) (2005).

The claimant must further show that the limitation on the major life activity is "substantial." *Toyota Motor*, 534 U.S. at 195, 122 S.Ct. at 690. Substantially limits means:

---

**6.** Davis stated in his deposition that Dr. Blue recommended that he not carry ladders, but Dr. Blue did not place him under a lifting restriction. Dr. Blue confirmed that Davis was not placed on any lifting restriction.

**7.** 29 U.S.C.A. § 701 *et. seq.* (West 1999 & Supp.2005).

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1)(i), (ii). Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact. *Id.* § 1630.2(j)(2).

▆▆▆ To determine if Davis has presented facts that indicate he has a disability within the meaning of Chapter 21, we first examine whether his impairment is one that substantially limits any major life function other than working. *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999). Only if there is no evidence of impairment to the other major life functions is an impairment to working considered. *Id.* To determine whether an individual is substantially limited in a major life activity, the court must conduct an individualized inquiry. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 2147, 144 L.Ed.2d 450 (1999). This list is not exhaustive, intending only to illustrate the types of activities that are of "central importance to daily life." *Toyota Motor,* 534 U.S. at 197, 122 S.Ct. at 691.

▆▆▆ Davis complains of an impairment to his ability to walk. Few cases exist that define what constitutes a substantial limitation on a person's ability to walk, however, it is clear that moderate difficulty experienced while walking does not rise to the level of a disability. *Talk,* 165 F.3d at 1025. In *Talk,* the plaintiff complained that she "walk[s] with a limp and move[s] at a significantly slower pace than the average person" but her orthopedic shoe allowed her to maintain full mobility. *Id.* The Fifth Circuit determined that although the plaintiff exhibited some impairment in her ability to walk, this impairment did not rise to the level of substantial impairment as required by the ADA and Chapter 21. *Id.*

In *Kelly v. Drexel University,* the plaintiff suffered from severe post-traumatic degenerative joint disease of the right hip, which he stated limited him to walking no more than a mile or so and caused him to walk more slowly when climbing stairs. 94 F.3d 102, 106 (3rd Cir.1996). After reviewing relevant EEOC guidelines, the court concluded that this impairment did not amount to a disability because it did not substantially limit him in the relevant life activity of walking. *Id.* at 106–07.[8]

---

**8.** The inability to walk long distances does not necessarily rise to the level of substantial limitation. *See Porch v. Dillard's Inc.,* No. 4:03–CV–170–Y, 2004 WL 1809813, at *5 (N.D.Tex. Aug. 12, 2004) (finding that the plaintiff was not substantially limited where the evidence showed only that she was unable to stand all day or walk for long periods of time); *Martin v. AIMCO Props.,* No. Civ.A.3:01CV2050–M, 2002 WL 1575411, at *2 (N.D.Tex. July 16, 2002) (finding that the plaintiff was not substantially limited in walking even though she walked with a slight limp and became fatigued at distances).

On the other hand, great difficulty in walking can rise to the level of a substantial limitation. *See McGarthy v. Ridge,* No. Civ. A. 302CV1111P, 2004 WL 1542161, at *4 (N.D.Tex. July 7, 2004) (finding that the plaintiff was substantially limited in walking where she had difficulty walking, even with assistive devices). For example, a person who required the use of a wheelchair was found to be substantially limited in walking. *Sapp v. MHI P'ship,* 199 F.Supp.2d 578, 583

Davis contends that because he cannot walk fast without falling down, while the average person can do so, he is substantially limited in his ability to walk as compared to the average person. In his affidavit, Davis stated that "when [he] walks fast or [tries] to run, [he] fall[s] down." During his deposition, when questioned about his ability to walk, he stated that "walking is okay." He later stated in his deposition that if he "walk[s] fast or runs, [he will] stumble and fall, but walking in a normal pace [is] okay." A letter written by Dr. Blue states that Davis had mild problems with balance. We hold that, although Davis experiences some impairment in his ability to walk, it does not rise to the level of a substantial impairment as required by the ADA and Chapter 21.

Davis also contends that he is substantially limited in his ability to run. The main authority for considering running as a major life activity comes from the Supreme Court. In *Sutton v. United Airlines,* a majority of the court held that disabilities should be evaluated using mitigating measures such as eyeglasses or medication. *Sutton,* 527 U.S. at 488, 119 S.Ct. at 2149. The dissenters argued that such an approach would mean that individuals who used prosthetic devices or wheelchairs would not meet the statutory definition of disability in the ADA. *Id.* at 495, 119 S.Ct. at 2152 (Stevens, J., dissenting). The majority opinion, in dicta, stated that this argument was incorrect, explaining that "individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled *because of a substantial limitation on their ability to walk or run.*" *Id.* at 488, 119 S.Ct. at 2149 (emphasis added). While this statement does not officially enshrine running as a major life activity, at least two courts have taken the position that running is a major life activity. *See Prince v. Claussen,* No. 98–1064, 1999 WL 152282, at *5 (10th Cir.1999) (unreported)[9] (stating that the plaintiff "maintains his impairments have implicated his ability to walk, stand, run, lift, throw, squat, and work. Each constitutes a major life activity under the ADA."); *Morrison,* 7 S.W.3d at 856 (holding that running is a major life activity under the ADA).

Other courts have determined that running is not a major life activity. *See Barnes v. Nw. Iowa Health Ctr.,* 238 F.Supp.2d 1053, 1073 n. 7 (N.D.Iowa 2002) (noting that the plaintiff did not assert that recreational running, bowling, golfing, and engaging in social activities are "major life activities," and that such an argument would not be meritorious); *Ruggles v. Keebler Co.,* 224 F.Supp.2d 1295, 1301 (D.Kan. 2002) (determining that running is not a major life activity); *Mickelsen v. Albertson's, Inc.,* 226 F.Supp.2d 1238, 1250 (D.Idaho 2002) (holding that although the plaintiff asserted that she could no longer engage in the recreational activities of running and bicycling, she cites to no evidence

(N.D.Tex.2002). Similarly, caselaw indicates that a person who uses other assistive devices, such as a cane, can be substantially limited in walking. *Cf. McGarthy,* 2004 WL 1542161, at *4; *Gonzales v. Columbia Hosp. at Med. City Dallas Subsidiary,* No. 3:01–CV–1287–P, 2002 WL 31245379, at *3–4 (N.D.Tex.2002) (finding a material issue of fact as to whether plaintiff was substantially limited in walking when, inter alia, the plaintiff walked with a cane).

9. *See* 10th Cir. Ct. R. 36.3, (stating that unpublished opinions are not binding precedent and citation to an unpublished decision is disfavored, but an unpublished decision "may be cited if (1) it has persuasive value with respect to a material issue that has not been addressed in a published opinion, and (2) it would assist the court in its disposition").

that she was severely restricted from doing any activities of central importance in most people's lives); *Fornes v. Osceola County Sheriff's Office,* No. 604CV1124ORL31DAB, 2005 WL 2012285, at *3 (M.D.Fla. Aug. 17, 2005) (concluding that running and other strenuous activities do not qualify as major life activities because, unlike the examples provided by the regulations, including hearing, speaking, breathing, and walking, strenuous physical activities simply are not of central importance to most people's daily lives); *Dicino v. Aetna U.S. Healthcare,* No. Civ. 01–3206(JBS), 2003 WL 21501818, at *7 (D.N.J. June 23, 2003) (holding that running is not a major life activity because it is not an activity that an ordinary person engages in on a regular basis and is not of central importance to most people's daily lives); *Billings v. Taylor Royall, Inc.,* Nos. CIV. AMD 99–1187, CIV. AMD 99–1189, 2000 WL 490734, at *4 (D.Md. Apr. 11, 2000) (noting that running and "having a capacity for physical exertion" are not included among major life activities); *Vaughnes v. United Parcel Serv., Inc.,* No. 97Civ.5849(SHS), 2000 WL 1145400, at *5 (S.D.N.Y. Aug. 14, 2000) (holding that "[r]unning is simply not of comparable importance and significance to such listed activities as caring for oneself, breathing, working, and learning, and therefore cannot be considered a major life activity"); *see also Black v. Roadway Express, Inc.,* 297 F.3d 445, 450 (6th Cir.2002) (reviewing plaintiff's complaint that he was "unable to run or jog at all" and determining that many of the activities that the plaintiff complained that he was substantially limited in were not regarded as major life activities, without expressly stating that running did not constitute a major life activity).

Having reviewed these cases, we conclude that running does constitute a major life activity within the meaning of the ADA and Chapter 21. The Supreme Court has stated, albeit in dicta, that "individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a *substantial limitation on their ability to walk or run." Sutton,* 527 U.S. at 488, 119 S.Ct. at 2149 (emphasis added). We are also persuaded by the fact that the list of "major life activities" included in the regulations, listing functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," is not intended to be exhaustive. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 n. 7 (5th Cir.1995) (citing 29 C.F.R. § 1630.2(i) and noting that the list is not intended to be exhaustive). Accordingly, we hold that running constitutes a major life activity under Chapter 21. Because Davis presented competent controverting evidence raising a genuine issue of material fact with regard to whether he has a physical impairment that substantially limits his ability to run, the City has failed to prove as a matter of law that Davis is not legally disabled. Accordingly, we sustain Davis' fourth point.

### 3. Could Davis Perform the Essential Functions of His Position With or Without Reasonable Accommodations?

In his second point, Davis asserts that the City failed to prove as a matter of law that he could not perform the essential functions of the relevant positions, with or without reasonable accommodations. In its motion for summary judgment and on appeal, the City asserts that Davis could not perform the essential functions of his position, stating that Davis "admittedly could not perform the essential functions of the position from which he resigned, and thus is not entitled to file suit under [Chapter

21]." In response, Davis argues that the relevant issue is not whether he could perform all the duties of his firefighter/paramedic job, but whether he could perform the duties of the job with reasonable accommodations. Davis asserts that the City could have reasonably accommodated him by assigning him to light-duty work in his firefighter/paramedic job or by transferring him to another job within the city.

An otherwise qualified person is "one who is able to meet all of the program's requirements in spite of his handicap." *Turco,* 101 F.3d at 1093 (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993)). To avoid summary judgment, Davis needed to show either that he could perform the essential functions of the job in spite of his disability, or that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job. *See Turco,* 101 F.3d at 1093. It is uncontested that Davis could not perform the essential functions of his firefighter/paramedic job despite his disability. The ADA defines "reasonable accommodation" as

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111(9). The plaintiff is required to demonstrate, as part of his prima facie case, that an accommodation of his disability exists and that such accommodation is reasonable. *See Riel,* 99 F.3d at 683. The burden of production is not a

heavy one and merely entails demonstrating the existence of a plausible accommodation, "the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 138 (2d Cir.1995).

Davis relies upon *Burch v. City of Nacogdoches,* 174 F.3d 615 (5th Cir.1999), to support his position that he could perform the essential functions of his firefighter/paramedic position with reasonable accommodation. Burch was a firefighter who was injured on the job. *Id.* at 616. Due to the nature of his injury, Burch could not perform the essential functions of his firefighter position. *Id.* at 619–20. He asserted that the city discriminated against him on account of his disability because the city did not offer him a light-duty position, and he further alleged that the city had allowed injured firefighters to assume light-duty positions in the past or had transferred these injured firefighters to other positions working for the city. *Id.* at 618, 620. The court held that the city was not required to accommodate Burch in his position as a firefighter because the ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so. *Id.* at 621.

Davis relies on language found in a footnote of the *Burch* opinion to support his contention that he could perform the essential functions of the firefighter/paramedic position with a reasonable accommodation because the City assigned other firefighter/paramedics to light-duty jobs on a long-term basis, while denying such an assignment to Davis. In this footnote, the Fifth Circuit stated that "had Burch shown that the [c]ity treated him differently from others similarly situated by not reassigning him under identical conditions, his position on appeal would have been much stronger." *Id.* at 621 n. 11. We agree

with Davis that the City could have reasonably accommodated him by assigning him to a light-duty firefighter/paramedic position, as the City did for another firefighter/paramedic who had been diagnosed with multiple sclerosis. Although Davis has failed to prove that the light-duty firefighter position was available, he has provided evidence that the City had accommodated other firefighter/paramedics in the past by assigning them to light-duty jobs, and the City acknowledges that it had transferred these firefighter/paramedics to light-duty positions.

■ The City asserts that Davis' reliance on *Burch* for the contention that he suffered an adverse employment action in that the City did not create a light-duty position for him is misplaced, because the conditions in the City at the time that Davis' employment ended were not identical to those in place when two other employees were assigned to light-duty positions, as required by *Burch*. The City argued that it was under severe budget constraints at the time that Davis requested reassignment to a light-duty firefighter/paramedic position, and thus, did not have the funds to create such a position. We perceive this contention to be a defense to the City's duty to provide a reasonable accommodation; therefore, it will be discussed below. *See* Tex. Lab.Code Ann. § 21.128. Thus, we hold that the City failed to prove as a matter of law that Davis could not perform the essential functions of his position with a reasonable accommodation. Accordingly, we sustain Davis' second point.

**4. Did the City Prove as a Matter of Law that Davis was Not Subjected to an Adverse Employment Action in that the City Refused to Make a Reasonable Accommodation?**

In his third point, Davis makes two assertions in arguing that he was subject to an adverse employment action. One of the assertions is that the City refused to make a reasonable accommodation for his disability. His second assertion, that the City subjected him to an adverse employment action by constructively discharging him, will be discussed later in this opinion.

The summary judgment proof shows that the City did not create a light-duty firefighter/paramedic position. Davis also asserts that he was subject to an adverse employment action because he was not transferred to an open telecommunications position. Davis contends that, in order to reasonably accommodate him, the City was required to transfer him to the open telecommunications position. Davis presented summary judgment proof that a job for which he was qualified, the telecommunications position, was available, yet the City required him to submit to an application process.

■ The literal language of the ADA defines the term "reasonable accommodation" to include "reassignment to a vacant position." *See* 42 U.S.C.A. § 12111(9). The statute does not say "consideration of a reassignment to a vacant position." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1164 (10th Cir.1999). The Tenth Circuit concluded that " 'reassignment' must mean something more than the mere opportunity to apply for a job with the rest of the world." *Id.* The D.C. Circuit also concluded that the word "reassign" must mean more than allowing an employee to apply for a job on the same basis as anyone else because the core word "assign" implies some active effort on the part of the employer. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1304 (D.C.Cir.1998).

We acknowledge that the City did provide Davis with a letter of recommendation

to the open telecommunications position; however, Davis was told that he would have to submit an application to be considered for this position, which he did. Thus, we hold that the City failed to prove as a matter of law that Davis cold not perform the essential functions of his position with a reasonable accommodation. We next address whether the employer can demonstrate that such an accommodation would impose an undue hardship.

### 5. Undue Burden

Chapter 21 provides that it is an unlawful employment practice for an employer to fail to make a reasonable accommodation for an employee, unless the employer can demonstrate that such an accommodation would impose an undue hardship. TEX. LAB.CODE ANN. § 21.128. Here, the City never asserted that transferring Davis to the open telecommunications position would be an undue burden, but the City has put forth evidence to show that creating a new light-duty firefighter position would be an undue burden.

 The assertion that an accommodation would be an undue burden for the employer is an affirmative defense. *Riel,* 99 F.3d at 682. The City never moved for summary judgment regarding their claim that creating a new light-duty firefighter position would be an undue burden.[10] Because the City never moved for summary judgment based on this affirma-

tive defense, the issue is not properly before us. *See* TEX.R.APP. P. 33.1(a); *see also Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991) (holding that party must raise affirmative defenses in motion for summary judgment). Therefore, the City failed to prove as a matter of law that it offered Davis a reasonable accommodation or that the accommodation Davis proposed would create an undue burden. Accordingly, we sustain Davis' third point.

## CONSTRUCTIVE DISCHARGE CLAIM

 In his third point, Davis asserts that the City failed to prove as a matter of law that Davis was not subject to an adverse employment action by constructively discharging him. In discrimination cases brought under Chapter 21, a prima facie case of discrimination is made by showing that the plaintiff (1) has a disability, (2) is a qualified individual for the job in question, and (3) an adverse employment decision was made because of the disability. *Talk,* 165 F.3d at 1024. In determining whether a plaintiff is a "qualified individual" with a disability, the court must first determine whether the plaintiff can perform the essential functions of the job he holds. *Chandler,* 2 F.3d at 1393; *see also Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir.1995), *cert. denied,*

---

10. In a single sentence in its motion for summary judgment, the City states that the accommodation that plaintiff requested "is not permitted as a matter of law and also would have created an undue hardship for the City." Each of the City's grounds for summary judgment were separately enumerated, however, and nowhere did the City specify that one of the grounds for summary judgment would be that it conclusively established the elements of the undue burden defense. A party who wishes to place an issue before the court on summary judgment is required to "expressly set out" the issue by "written motion, answer or other response." TEX.R. CIV. P. 166a(c); *Travis v. City of Mesquite,* 830 S.W.2d 94, 101 (Tex.1992). The purpose of this rule is to ensure that the non-movant has adequate notice of the movant's claims in order to enable the non-movant to prepare a response. *Travis,* 830 S.W.2d at 101. Therefore, we conclude that this single sentence did not constitute enough notice to appraise Davis and the trial court that the City moved for summary judgment on the affirmative defense of an undue burden. *See id.*

516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996).

■■■ If the court concludes that the plaintiff is not able to perform the essential functions of the job, the court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Chandler*, 2 F.3d at 1393–94. If no reasonable accommodation would enable the plaintiff to perform the essential functions of his position, then he is not a "qualified individual" with a disability. *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 212–14 (4th Cir.1994).

As held above, the City has failed to conclusively establish that Davis was not disabled within the meaning of Chapter 21 and that Davis was not a qualified individual for the job in question, in that he could perform the essential functions of the position, with or without reasonable accommodations. Therefore, we will focus on the third element of the cause of action and determine whether the City subjected Davis to an adverse employment action by constructively discharging him.

■■■ Where, as here, an employee resigns, he may satisfy the discharge requirement by proving constructive discharge. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir.1997). To establish a constructive discharge, Davis must establish that "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* Many factors are relevant to the consideration of whether the plaintiff was constructively discharged, including evidence of badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation. *Id.* An employee may also be constructively discharged if the employer gives the employee an ultimatum to quit or be fired. *Jenkins v. State of La., Through Dep't of*

*Corrs.*, 874 F.2d 992, 996 (5th Cir.1989) (stating that constructive discharge can be proven with evidence that plaintiff-employee was given ultimatum), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 955 (1990); *Faruki*, 123 F.3d at 319; *see also, Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978 (10th Cir.) (recognizing that employee can prove constructive discharge by showing that she faced choice between resigning or being fired), *cert. denied*, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996).

■■■ Here, Davis presented a transcript of a tape-recorded meeting between himself, Fire Chief David Anderson, and Carolyn Van Duzee, the City's personnel director. The transcript reflects that Davis asked Van Duzee whether he was being terminated. In response to his question, Van Duzee informed Davis that it would be in his best interest if he decided to resign rather than be terminated because future employers may ask the City whether Davis resigned or was terminated. Van Duzee never stated that Davis should resign and otherwise he would be terminated; however, according to the transcript, she informed Davis that it would be in his best interest to resign, rather than go through termination, but that it was his option. During her deposition, Van Duzee states that she never informed Davis whether or not he was being terminated because she would not be able to answer that question, but the fire chief would be able to. Van Duzee also questioned the accuracy of the transcript during her deposition. In viewing the evidence presented by Davis and indulging every reasonable inference in his favor, we conclude that the City has failed to prove as a matter of law that Davis was not subjected to an adverse employment action in constructively discharging him. *See Valence Operating Co.*, 164 S.W.3d at 661. Accordingly, we sustain Davis' third point.

## AGE DISCRIMINATION CLAIM

■ In his seventh point, Davis asserts that the City failed to prove as a matter of law that Davis cannot establish an age discrimination claim. In Texas, an employer may not discriminate against its employees because of age. *See* TEX. LAB. CODE ANN. § 21.051(1). In discrimination cases that have not been fully tried on the merits, we apply the *McDonnell Douglas* burden-shifting scheme. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003). Under this framework, the plaintiff must first demonstrate a prima facie case of discrimination, and if the plaintiff is successful, the burden of production shifts to the defendant employer to show a legitimate and non-discriminatory basis for the adverse employment decision. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant employer demonstrates a non-discriminatory reason for its employment action, the plaintiff must show that the defendant's proffered reason is merely a pretext. *See id.* at 804, 93 S.Ct. at 1825.

■ To establish a claim for age discrimination under Title VII, a plaintiff must first establish a prima facie case of discrimination by demonstrating that he: (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which he was discharged; and (4) was replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of his age. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.2005).

■ The summary judgment proof shows that Davis was over forty at the time of the alleged age discrimination; however, Davis cannot prove that he was qualified for the position from which he was discharged. The Fifth Circuit has held that a plaintiff challenging his termination can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir.1988). The court explained that in order to show that he continues to possess the necessary qualifications for his job, he must not have suffered a physical disability that renders him unfit for the position for which he was hired. *Id.* at 1506 n. 3. Here, Dr. Blue's deposition testimony establishes that Davis would be unable to consistently climb ladders or drive emergency vehicles. Additionally, Davis asserts that he cannot walk fast or run without falling down. Because the summary judgment proof establishes that Davis is not qualified for the position, the City has conclusively negated at least one element of Davis' prima facie case of age discrimination. Accordingly, we overrule Davis' seventh point.

## CONCLUSION

We reverse the trial court's judgment as it relates to Davis' causes of action for failure to reasonably accommodate and constructive discharge; we remand these causes of action to the trial court. We affirm the portion of the trial court's judgment as it relates to Davis' cause of action for age discrimination.[11]

WALKER, J. concurs without opinion.

---

11. Davis' first point is a general point challenging the entire summary judgment. We

sustain this point as it relates to Davis' causes of action for failure to reasonably accommodate and constructive discharge. We overrule this first point as it relates to Davis' cause of action for age discrimination.