COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-374-CV

BOB R. BARNARD AND NATIONAL APPELLANTS

DOOR INDUSTRIES, INC.

V.

WESTERN STRATEGIC ADVISORS, LLC APPELLEES

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In eight issues, Appellants Bob Barnard and National Door Industries appeal the summary judgment granted in favor of Appellees Western Strategic Advisors. 
 
We reverse and remand.

II. Factual and Procedural History

National Door Industries (“NDI”) is a manufacturer and distributor of products to the garage door industry.  NDI is owned by Bob Barnard and his three sons, Mike, Ken, and Britt Barnard.  Bob Barnard (“Barnard”) is the majority shareholder and chief executive officer of NDI.  In 2004, the Barnards decided to sell NDI and sought help from Western Strategic Advisors (“Western”) with regard to locating a buyer and negotiating the terms of the sale.  Western is an investment banker and business broker involved in the acquisition and sale of companies. 

On July 13, 2004, Barnard and NDI signed an Engagement Agreement with Western in which Western agreed to provide its services in return for NDI’s promise to pay Western a four percent commission of the sales price if Western located a purchaser who actually bought NDI.  In addition, the engagement agreement provided that 
Western could recover a one percent consulting fee, but only “
in the event a letter of intent has been signed and, for whatever reason
,
 the Seller and Company decide not to complete the sale at the agreed upon terms of the letter of intent.” 

Western located a potential purchaser for NDI, Bolder Capital, LLC (“Bolder”).  On September 8, 2004, Bolder sent NDI a signed letter of intent for the purchase of NDI.  Bolder offered to purchase NDI for $52 million.  The letter of intent expressly stated that “its terms [were] not legally binding on either party.”  Barnard and NDI signed Bolder’s letter of intent on September 24, 2004.  Bolder’s letter of intent outlined twelve conditions that had to be met before the deal to purchase NDI could close. 
 One of the conditions, “Executive Management Consideration,
” provided that NDI’s president, Jim Lewis, and vice-president, Rick Smith, could continue to manage NDI and acquire an ownership interest.  

On October 14, Bolder’s managing directors, Todd Hamilton and Ward McNally, traveled to Fort Worth to visit the NDI plant.  They toured the plant and met with NDI’s president and vice-president, as well as Western’s president, Don Woodard.  At this meeting Bolder announced that it had found nothing that would prevent it from completing the transaction according to the terms contained in the letter of intent.  After the meeting, NDI President Jim Lewis told Western’s Don Woodard that Barnard “didn’t come away from the meeting with good feelings” because Barnard didn’t feel that Bolder was treating Jim Lewis and Rick Smith fairly regarding Bolder’s proposed executive compensation package.  After the October 14th meeting, Western began to have difficulty communicating with NDI.  Woodard claimed that NDI cancelled several meetings on short notice.
(footnote: 2)
 By late November 2004, four of the twelve conditions remained unresolved between the parties. 
 On November 17, Jim Lewis sent an email to Bolder confirming that he had received the proposed executive compensation contracts and that he and Rick Smith would consult with their attorneys about the contracts.  
On November 20, Jim Lewis sent an email to Chuck Milliken, NDI’s attorney, stating that Barnard had expressed his concern that he was not comfortable with the transaction at that point.  Based on Barnard’s instruction, Lewis told Milliken to “taxi up and hold until [Lewis] and Rick Smith had a meeting with their attorneys.”  Barnard testified that this order meant that Milliken was to stop working on the written agreements until Lewis and Smith met with their attorneys and until NDI and Bolder could finalize the details regarding the unresolved conditions.  After this, all of Bolder’s attempts to contact NDI went unanswered.

On December 20, 2004, Western’s president, Don Woodard, sent a letter to Barnard warning him that he and NDI were jeopardizing the deal by acting in a manner that could be interpreted as if they did not want the deal to close.  Western demanded that NDI take immediate action to settle the unresolved conditions.  Barnard responded to Woodard’s letter by telling him that “we would get things worked out.” 

On January 8, 2005, Bolder sent a letter to NDI withdrawing its letter of intent for the purchase of NDI.  Bolder gave two reasons for why it was withdrawing its letter of intent: (1) weak communication, which had caused the process of closure to be slow, and (2) the fact that the parties had reached the end of their 120-day exclusivity period.
(footnote: 3)
 Ten days after Bolder withdrew from the negotiations, Western sent a demand letter to NDI seeking to recover its one percent consulting fee pursuant to paragraph five of the engagement agreement.  NDI refused to pay the consulting fee on the grounds that it was not the party who decided to end the negotiations.  

Two months after Bolder withdrew the letter of intent, 
Western sued NDI and Barnard for breach of contract.  Western moved for summary judgment under the theory that NDI breached its contract when it failed to pay Western a one percent consulting fee.  Western argued that the letter of intent contained terms to which both parties agreed, and that NDI decided not to complete the sale on those agreed terms.  
The trial court granted the motion and awarded $520,000 (one percent of the $52 million sales price), pre-judgment interest, and attorney’s fees to Western.  NDI filed a motion for new trial, which was overruled by the trial court.  NDI then brought this appeal. 

III. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.  
Tex. R. Civ. P.
 166a(c); 
Trico Techs. Corp. v. Montiel,
 949 S.W.2d 308, 310 (Tex. 1997). 
  But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.  
See Wal-Mart Stores, Inc. v. Spates
, 186 S.W.3d 566, 568 (Tex. 2006); 
City of Keller v. Wilson
, 168 S.W.3d 802, 822-24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

IV. Whether NDI “Decided Not to Complete the Sale”

The focal point of this case evolves from the issue of whether affidavit  testimony that conflicts with objective evidence creates a fact question which would preclude summary judgment. 

A. Decision Not to Complete the Sale 

When conflicts between the nonmovant’s affidavit testimony and the objective facts arise, the conflict must be resolved in the nonmovant’s favor. 
See Davis v. Grapevine
, 188 S.W.3d 748, 756 (Tex. App.—Fort Worth 2006, pet. denied) (holding that when conflicting inferences may be drawn between a party’s summary judgment affidavit and his deposition on matters of material fact, a fact issue is presented).  

Here, 
NDI argues that a genuine issue of material fact exists regarding whether Barnard and NDI ever decided not to complete the sale.  In support of its claim, 
NDI filed several affidavits in which various individuals testified that they wanted the sale of NDI to go through.  First, Bob and Britt Barnard both stated that they intended to go through with the sale.
  Next, NDI points to Mike Barnard’s testimony that he wanted to sell NDI.  NDI then highlights testimony from Jim Lewis and Mike Barnard, who each testified that no board meeting was ever held at which NDI formally decided not to complete the sale.  Finally, NDI directs the court to Bob Barnard’s testimony in which he denied ever deciding not to sell NDI.  
NDI argues that this witness testimony demonstrates that NDI and Barnard never decided not to complete the sale; therefore, a genuine issue of material fact existed and summary judgment was improper. 

In contrast, Western points out that the objective evidence demonstrates that NDI and the Barnards put forth minimal effort to ensure that the negotiations went forward and therefore is indicative of their decision not to complete the sale.  For instance, Woodard testified that after the October meeting between NDI and Bolder representatives, he began to have difficulty communicating with NDI.  He stated that Barnard and Jim Lewis did not return his phone calls and claimed that it became increasingly difficult to get meetings scheduled.  At Barnard’s direction, Lewis then issued the “taxi up and hold” instruction on November 20, 2004, thus preventing NDI’s attorney from communicating with Bolder’s attorneys regarding negotiation of the executive compensation packages or any other matters.  Woodard testified that Bolder’s president, Todd Hamilton, repeatedly contacted him to complain that he was getting no response from NDI.  Woodard then sent Jim Lewis an email encouraging him to contact Bolder and resume discussions.  Despite this encouragement, communication was not reestablished between NDI and Bolder.  Eventually, Bolder withdrew its letter of intent, citing weak communication as a primary reason for its withdrawal.

A review of the evidence shows that while NDI presented affidavits supporting its position that NDI and the Barnards never decided not to complete the sale, the affidavits are in direct conflict with the objective facts.  Although all of the testimony may seem rather incredible in light of NDI’s actions, we are bound by the precedent of this court, so for purposes of summary judgment  we resolve the conflict between the affidavits and the objective facts in favor of NDI, the nonmovant. 
 See Davis, 
188 S.W.3d at 756 (holding that when conflicting inferences may be drawn between a party’s summary judgment affidavit and his deposition on matters of material fact, a fact issue is presented).  
Therefore, we hold that the affidavit testimony raised an actual fact issue.  
Id.

B. Western’s Theory of Prevention

Western also contends that if this court determines that a fact issue exists regarding whether NDI “decide[d] not to complete the sale,” the summary judgment should still be upheld because NDI’s conduct prevented “complet[ion] [of] the sale.”
(footnote: 4) 

In evaluating Western’s contention, we examine paragraph five of the engagement agreement, which states that Western can only recover a one percent consulting fee “
in the event a letter of intent has been signed and, for whatever reason
,
 the Seller and Company decide not to complete the sale at the agreed upon terms of the letter of intent.” 

In construing a written agreement, such as an engagement agreement, a court must strive to give meaning to each provision.  
See Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 
925 S.W.2d 565, 574 (Tex. 1996).  To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless.  
Coker v. Coker
, 650 S.W.2d 391, 393 (Tex. 1983).  A court should construe a written contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served.  
Lenape Res. Corp
., 925 S.W.2d at 574.

Despite Western’s assertion that the summary judgment may be upheld on the theory of prevention, our review of the evidence shows otherwise.  Under the plain language of the engagement agreement, the only issue that matters in evaluating whether Western is entitled to the consulting fee is whether NDI and Barnard “decide[d] not to complete the sale at the agreed upon terms of the letter of intent.”  If we were to construe the engagement agreement to allow Western to recover the consulting fee by merely proving prevention, Western would no longer be required to prove that NDI and Barnard “decide[d] not to complete the sale,” and a portion of the engagement agreement would be rendered meaningless. 
 See Coker
, 650 S.W.2d at 393.  Furthermore, logic tells us that before NDI and Barnard could have prevented the sale from being completed, they must have first decided not to complete the sale.  We have already determined that NDI and Barnard have shown that Western did not conclusively establish that NDI and Barnard “decide[d] not to complete the sale.”  And even though Western has presented some evidence that indicates that NDI and Barnard’s actions could have prevented negotiations from progressing, under the terms of the engagement agreement Western is not entitled to recover a consulting fee unless it proves that NDI and Barnard “decide[d] not to complete the sale.”  Western has failed to do this.  Therefore, for purposes of our summary judgment review, we reject Western’s prevention argument.  

V. Conclusion

Because NDI has raised a genuine issue of material fact regarding whether Barnard and NDI ever “decide[d] not to complete the sale,” we hold that the summary judgment was improperly granted. 
 
Accordingly, we reverse the summary judgment and remand this case to the trial court for further proceedings. 

BOB MCCOY

JUSTICE

PANEL A: HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED: January 31, 2008

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The record does not reflect how many meetings were cancelled or how much notice NDI gave when it cancelled the meetings. 

3:
Bolder actually withdrew the letter of intent two weeks before the exclusivity period ended. 

4:
Western asserts that NDI and Barnard took three actions that made it impossible for the sale to occur.  First, they told their lawyer to “taxi up and hold,” and they never withdrew the instruction.  Second, Lewis and Smith failed to meet with their attorneys, and this kept the executive employment contract from being finalized.  Third, NDI and Barnard did not respond to the request to extend the exclusivity period, and Bolder could not continue without a guarantee of exclusivity.