

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00042-CV

**TEXAS DEPARTMENT OF STATE HEALTH SERVICES**,
Appellant

v.

Amy W. **ROCKWOOD**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-04447
The Honorable Stephani A. Walsh, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:     Sandee Bryan Marion, Chief Justice
         Karen Angelini, Justice
         Marialyn Barnard, Justice

Delivered and Filed:  May 27, 2015

AFFIRMED IN PART; REVERSED IN PART

Amy W. Rockwood sued the Texas Department of State Health Services alleging the

Department violated the Texas Commission on Human Rights Act (TCHRA) by: (1) terminating

her because of her disability; (2) terminating her in retaliation for requesting a reasonable

accommodation; and (3) failing to provide a reasonable accommodation for her disability.  The

Department filed a plea to the jurisdiction which the trial court denied.  On appeal, the Department

asserts the trial court erred because the Department conclusively negated an essential element of

each of Rockwood's claims.  We affirm the trial court's order as to Rockwood's retaliatory

discharge and reasonable accommodation claims, but reverse the trial court's order as to Rockwood's disability discrimination claim.

## BACKGROUND

Rockwood was employed by the Department as a medication nurse from December 1, 2008 to October 14, 2009. In this position, Rockwood distributed medication to patients receiving mental health treatment at the San Antonio State Hospital.

Rockwood was initially assigned to the medication room in the Arnold Hall unit. Rockwood did not request any accommodation while assigned to Arnold Hall. On August 1, 2009, Rockwood was transferred to the medication room in the Seguin Hall unit.

On August 5, 2009, Rockwood sent an email to Martha Fritz, the Hospital's safety officer. Without explaining why, Rockwood requested to schedule an appointment for a workplace evaluation in order to make workplace accommodations. Rockwood copied her supervisor, Aina Oyibo, on the email. Rockwood stated in the email that she had been "doing some research on [her] own so [she could] examine the item needed." In her deposition, Rockwood explained that she needed an accommodation for her back due to injuries she sustained in several car accidents.

On August 6, 2009, Fritz responded to Rockwood's email requesting that Rockwood call at her convenience. On August 11, 2009, Rockwood responded to Fritz's email stating she had been out sick and requested Fritz to contact her. Rockwood and Fritz spoke by telephone, and Rockwood testified in her deposition that she explained her back pain to Fritz. After their telephone conversation, Rockwood sent Fritz another email the same day stating Rockwood would do "research on my end, online, and visit some stores with the floor mats to test them and make notations as we discussed." Fritz also sent a follow-up email to Oyibo, stating Rockwood had requested an ergonomic assessment of her workstation. The email noted Rockwood was required to stand at her worksite throughout the day on a solid concrete surface. As a "temporary remedy,"

Fritz requested that a stool and a padded rubber mat be placed on the floor at Rockwood's station "to help accommodate her."

The next email communication from Rockwood to Fritz is dated August 24, 2009; however, Rockwood testified in her deposition that she had telephone conversations with Fritz between August 11, 2009 and August 24, 2009, and that Fritz had visited her workplace on one occasion when Rockwood was not at work. In the August 24, 2009 email, Rockwood again requested a workplace evaluation because of the back pain she experienced since working at Seguin Hall. In this email, Rockwood informed Fritz that a second barstool had been removed from the medication room for cleaning and was never returned.[1] Rockwood further stated she understood no money could be spent on workplace accommodations until September but asked if she would be reimbursed if she purchased the barstool and mats. Rockwood stated "ever since I was assigned to Seguin each day I work I am in pain. Day after day of this wears on a person . . . when I know I have to be in that med room and on my feet all day." Rockwood requested the workplace evaluation be scheduled so she could get "what I need to help me do my job and not be in pain like this." In an affidavit, Fritz stated she was on vacation when Rockwood sent the August 24, 2009 email, and she did not return to work until early September.

On September 2, 2009, Rockwood's delays in distributing medication to the patients and her actions during that delay resulted in emails being sent to Rockwood's supervisors by Debra Johnson, a registered nurse, and Dr. Steven Cathey, a physician, detailing the events and raising concerns regarding patient safety.[2] Rockwood also sent an email to two of her co-workers and her

---

[1] In her deposition, Rockwood stated that the only barstool in the medication room was used by the other LVN who worked with Rockwood.

[2] In her email, Johnson also stated Rockwood had failed to timely distribute medications to the patients on August 30, 2009; however, Rockwood testified in her deposition that the actual date was August 23, 2009, and that the scheduled medications were timely distributed and only the "as needed" medications were delayed.

supervisor acknowledging that she needed assistance that day; however, in her deposition, Rockwood denied that the events occurred as detailed in the other emails.

On September 3, 2009, Rockwood did not work in the medication room but was assigned other duties because of the events of the prior day. In her deposition, Rockwood stated that she met with Lottie Sims, the nurse administrator for acute services, on that day. Rockwood stated that during her meeting with Sims, they discussed both the events that occurred on September 2, 2009, and the request she had made for a workplace evaluation and accommodation.

On September 4, 2009, Sims decided to place Rockwood on paid administrative leave to review the September 2, 2009 incident, and left Rockwood a voice mail on her home phone informing her of the decision. That night, Rockwood was in a serious automobile accident and was not able to return to work.

On September 10, 2009, Rockwood sent Fritz another email with copies to Oyibo and Sims. In this email, Rockwood stated no stool or mat had been placed in the medication room as Fritz had requested in her email to Oyibo dated August 11, 2009. Rockwood stated Sims informed her in a conversation on September 3, 2009, that mats had been purchased but could not be located. Although Rockwood was uncertain when she would return to work, she wanted to ensure that the accommodations would be in place when she was able to return. Rockwood also detailed her medical condition and mentioned the possibility of surgery.

On October 5, 2009, all of Rockwood's paid leave was exhausted, and Sims signed a request for Rockwood to receive sick leave pool. Rockwood was not eligible for FMLA leave or extended sick leave because she had not worked for the Department long enough. The physician's certification signed by Rockwood's physician and attached to the request stated the duration of the Rockwood's condition was unknown and Rockwood was unable to perform any of her job

functions due to her condition. The request for sick leave pool was denied on October 6, 2009, but Rockwood appealed the initial decision.

On October 9, 2009, Sims sent Rockwood notice of possible disciplinary action based on: (1) job performance issues including the September 2, 2009 incident; and (2) her inability to return to work after exhausting all available leave. On October 13, 2009, Rockwood met to discuss the notice with Sims, a human resources employee, and a union organizer. At the conclusion of the meeting, Sims handed Rockwood notice that her employment was terminated for the two reasons stated in the prior notice. On October 22, 2009, Rockwood prevailed on the appeal of her request for sick leave pool, and was paid for the period from October 5, 2009, the date her available leave was exhausted, and October 13, 2009, the date of her termination.

Rockwood filed a grievance challenging the decision to terminate her; however, the administrative law judge sustained the decision to terminate. Rockwood then filed employment discrimination complaints with the EEOC and the Texas Workforce Commission. The EEOC determined the record did not support Rockwood's allegations of discrimination, and Rockwood timely filed the underlying lawsuit after receiving a right to sue letter.

After the Department filed its motion for summary judgment and plea to the jurisdiction, Rockwood filed an untimely response. After a hearing, the trial court signed an order denying the Department's motion and plea. The order recites that the trial court considered "the motion and the responses thereto." Accordingly, we also consider the response in our review on appeal. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (noting permission to file a late response may be reflected in a recital in the summary judgment); *K-Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 96 (Tex. App.—San Antonio 2002, no pet.) (same).

## STANDARD OF REVIEW

We review the trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id*. "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id*. "If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). "If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder." *Id*. "This standard mirrors our review of summary judgments, and we therefore take as true all evidence favorable to [Rockwood], indulging every reasonable inference and resolving any doubts in her favor." *Id*.

## BURDEN-SHIFTING UNDER *MCDONNELL DOUGLAS*

Rockwood alleges employment discrimination claims under the TCHRA. "Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases." *Mission Consol. Ind. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). "The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id*. Because direct evidence of discrimination is "hard to come by," however, the Court created a second method which is "the burden-shifting mechanism of *McDonnell Douglas*." *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). "Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima

facie case of discrimination." *Id*. "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous." *Id*. (internal citation omitted). "The *McDonnell Douglas* presumption is merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence." *Id*. "The prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id*.

If a plaintiff successfully demonstrates a prima facie case, "the burden of production shifts to the defendant employer to show a legitimate and non-discriminatory basis for the adverse employment decision." *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth 2006, pet. denied). "If the defendant employer demonstrates a non-discriminatory reason for its employment action, the plaintiff must show that the defendant's proffered reason is merely a pretext." *Id*.

### JURISDICTION AND SCOPE OF REVIEW

In an employment discrimination suit against a governmental employer like the Department, "the prima facie case implicates both the merits of the claim *and* the court's jurisdiction because of the doctrine of sovereign immunity." *Mission Consol. Ind. Sch. Dist.*, 372 S.W.3d at 635-36 (emphasis in original). Although the legislature has waived immunity for suits under the TCHRA, "the Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Id*. at 636. "For a plaintiff who proceeds along the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA." *Id*. at 637. "Failure to demonstrate those elements means the plaintiff never gets the presumption of discrimination and never proves his claim." *Id*. "[T]hat failure also means the court has no

jurisdiction and the claim should be dismissed." *Id*. Therefore, the Department properly filed a plea to the jurisdiction challenging whether Rockwood sufficiently pled a violation of the TCHRA, and this court has jurisdiction to consider the Department's interlocutory appeal challenging the trial court's order denying the plea. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015) (allowing an interlocutory appeal from the denial of plea to the jurisdiction by a governmental unit).

The more difficult question is whether this court also has jurisdiction to consider the trial court's order denying the Department's motion for summary judgment. Both parties brief the issues as if this court has jurisdiction to consider the denial of the summary judgment. "Because this question deals with jurisdiction, [however], we can (and must) consider it ourselves." *Mission Consol. Ind. Sch. Dist.*, 372 S.W.3d at 635.

This court generally does not have jurisdiction to consider an order denying a motion for summary judgment because such an order is interlocutory and not appealable. *See Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994); *see generally* Tim Patton, *Summary Judgments in Texas* § 8.01[3][a] (3rd ed. 2014). The Texas Supreme Court has held, however, that a trial court's order denying a governmental unit's challenge to subject matter jurisdiction is appealable, "irrespective of the procedural vehicle used." *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006). Therefore, if the Department's motion for summary judgment challenges the trial court's subject matter jurisdiction based on the Department's sovereign immunity, then this court would have jurisdiction to consider the trial court's order denying the motion. *See id*.

In addressing immunity and appellate jurisdiction to consider interlocutory appeals in the context of a TCHRA claim, the Texas Supreme Court has instructed that a plaintiff's failure to demonstrate the elements of a prima facie case means the trial court has no jurisdiction. *Mission Consol. Ind. Sch. Dist.*, 372 S.W.3d at 637. The court further cautioned, however:

This conclusion does not mean a plaintiff in Garcia's position will be required to marshal evidence and prove her claim to satisfy this jurisdictional hurdle. While a plaintiff must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation, she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts. And even then, the plaintiff's burden of proof with respect to those jurisdictional facts must not "involve a significant inquiry into the substance of the claims." Cases may exist where the trial court decides, in the exercise of its broad discretion over these matters, that the inquiry is reaching too far into the substance of the claims and should therefore await a fuller development of the merits.

*Id*. at 637-38. We read this cautionary statement as limiting our scope of review to the elements of the prima facie case and whether a fact issue exists as to those elements or whether those elements have been conclusively negated. As a result, in an interlocutory appeal addressing a trial court's jurisdiction to consider a TCHRA claim, we do not consider the remaining steps in the *McDonnell Douglas* burden-shifting analysis, namely whether the defendant employer can demonstrate a non-discriminatory reason for its employment action, and, if so, whether the plaintiff can show that the proferred reason is merely a pretext. *See Davis*, 188 S.W.3d at 757. Under the Texas Supreme Court's reasoning in *Mission Consol. Ind. Sch. Dist.*, those remaining steps are not relevant to a waiver of immunity analysis but involve "the substance of the claims and should therefore await a fuller development of the merits." 372 S.W.3d at 638.

Based on the foregoing, we conclude that this court only has jurisdiction to consider whether Rockwood pled the basic facts that make up a prima facie case for her TCHRA claims and whether the Department conclusively negated one of those basic facts. To the extent the parties' briefs address issues relating to the other steps in the *McDonnell Douglas* burden-shifting framework, we do not have jurisdiction to consider those issues in this interlocutory appeal.

### REASONABLE ACCOMMODATION

In order to establish a claim based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) she is an individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodations she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Tex. Dept. of Fam. & Protective Servs. v. Howard*, 429 S.W.3d 782, 789 (Tex. App.—Dallas 2014, pet. denied); *Davis*, 188 S.W.3d at 758. Rockwood alleged the Department failed to provide a reasonable accommodation for her disability. We note the *McDonnell Douglas* burden-shifting framework is not applicable to a reasonable accommodation claim. *Davis*, 188 S.W.3d at 759.

A.    Disability

The Department first focuses on Rockwood's need to show she is an individual with a disability. Disability is defined as including a physical impairment that substantially limits one or more major life activities. TEX. LAB. CODE ANN. § 21.002(6) (West 2015). "Major life activity" is defined to include standing and working. *Id*. at § 21.002(11-a).

The Department contends Rockwood failed to establish she was disabled before her car accident on September 4, 2009. To support this contention, the Department relies on Rockwood's testimony that she did not require an accommodation while working in Arnold Hall. This evidence does not, however, conclusively negate Rockwood's allegation that she has a disability. In her deposition, Rockwood testified she did not need an accommodation to perform her job at Arnold Hall because the medication room already had a rubber mat. Rockwood explained she had sustained back injuries in several car accidents and had previously undergone back surgery. Rockwood also testified about the pain she experiences when standing for long periods of time and the medication she was taking to alleviate this pain. Accordingly, the evidence at the very

least raised a fact issue as to whether Rockwood has a disability because the physical impairments in her back limit her ability to stand and work.

    B.    The Department's Knowledge

The Department next challenges whether Rockwood established the Department had notice of her disability. The Department relies on Fritz's affidavit in which she stated she understood Rockwood's issue to be an ergonomic concern and "did not understand her to be making any sort of disability discrimination request." Although Rockwood did not refer to her disability in her email to Fritz, Rockwood testified that she explained her back pain to Fritz in their phone conversation on August 11, 2009. Also, the emails document that Rockwood's supervisor, Oyibo, was copied on the initial email request, and the Department presented no evidence to negate notice to the Department based on Oyibo's knowledge. Therefore, the evidence was sufficient to raise a fact issue on this element of Rockwood's claim.

    C.    The Department's Refusal to Make Accommodations

Finally, the Department contends the evidence negated Rockwood's allegation that the Department refused to make a reasonable accommodation. "Once the employee identifies a disability and resulting limitations, and suggests a reasonable accommodation, the employer and the employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *Hagood v. County of El Paso*, 408 S.W.3d 515, 525 (Tex. App.—El Paso 2013, no pet.). "The interactive process requires communication and good-faith exploration." *Id*. (internal citations omitted). "When an employer does not engage in a good faith interactive process, the employer violates the [TCHRA]." *Id*. "However, when responsibility for the breakdown of the interactive process is traceable to the employee, the employer has not violated the [TCHRA]." *Id*.

In this case, the evidence establishes that Fritz and Rockwood began engaging in an interactive process to accommodate Rockwood's disability. This process broke down, however, when Rockwood was not provided with a stool and a mat as Fritz requested in her August 11, 2009 email to Oyibo. Although it appears a stool may have been provided for a short period of time after Fritz made the email request, the stool did not remain available for Rockwood to use, and the mat was never provided.[3] Therefore, the evidence also raises a fact issue on this element of Rockwood's claim.

D. Conclusion

Because the evidence raised a fact issue as to each of the foregoing elements of Rockwood's reasonable accommodation claim, the trial court properly denied the plea to the jurisdiction as to that claim.

## DISABILITY DISCRIMINATION

To establish a prima facie case of disability discrimination, the plaintiff must show: (1) she has a disability; (2) she is qualified for the job; and (3) she suffered an adverse employment decision because of her disability. *Howard*, 429 S.W.3d at 787; *LeBlanc v. Lamar State College*, 232 S.W.3d 294, 299 (Tex. App.—Beaumont 2007, no pet.).

With regard to this claim, Rockwood alleged in her pleadings that she was terminated as a result of her disability. Accordingly, to establish a prima facie case of disability discrimination, Rockwood was required to show that she was qualified for her job when she was terminated. We conclude the evidence presented by the Department, however, negated this element of Rockwood's claim.

---

[3] Rockwood's email dated August 24, 2009 made reference to a second barstool; however, Rockwood testified in her deposition that the reference was to a second barstool that had been removed from the medication room for cleaning before Rockwood was transferred to Seguin Hall.

The evidence established that Rockwood was in a car accident on September 4, 2009, had surgery in December of 2009, and was not released to return to work until March 15, 2010. Rockwood testified in her deposition that she was not able to work before March 15, 2010, and she could not have worked at any job, including working for the Department as a medication nurse. Rockwood also conceded in her testimony that she still could not perform the duties of a medication nurse at the time of her deposition because she would not be able to intervene in patient emergency situations. She also questioned whether the patients would present an issue for her own personal safety because of her back condition. Therefore, because the evidence conclusively negated that Rockwood was qualified to perform the duties of a medication nurse either at the time of her termination or even after she was released to return to work, the trial court erred in denying the plea to the jurisdiction as to this claim.

## RETALIATORY TERMINATION

To state a prima facie claim for retaliatory discrimination, a plaintiff must show that: (1) she engaged in a protected activity; (2) she was subject to an adverse employment action; and (3) a causal connection existed between her participation in the protected activity and the adverse employment action. *Hagood*, 408 S.W.3d at 526. With regard to this claim, Rockwood alleges that she was terminated because she made a request for a reasonable accommodation. In her deposition, Rockwood testified that the Department knew that it had not properly responded to her request for a reasonable accommodation, knew that it was liable, and, as a result, fabricated reasons to terminate her.

In its brief, the Department asserts Rockwood was required to rebut the nondiscriminatory reasons it articulated for her termination. In light of the appellate standard of review, we disagree. As previously explained in the section of this opinion entitled Jurisdiction and Scope of Review, in an interlocutory appeal, we are limited to reviewing whether Rockwood has shown a prima facie

case for her claim. Therefore, we do not examine the other *McDonnell Douglas* burden-shifting steps that follow the establishment of a prima facie case. *See Mission Consol. Ind. Sch. Dist.*, 372 S.W.3d at 637-38.

The Department also refers to the causation element of Rockwood's retaliatory discharge claim. In a footnote, the Department argues "mere temporal proximity" is insufficient evidence to show a causal link.

The cases cited by both the Department and Rockwood recognize that close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to establish a prima facie case of retaliation. *See Amsel v. Tex. Water Dev. Bd.*, 464 Fed. Appx. 395, 402 n.8 (2012); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). The cases also caution, however, that timing alone will not always be sufficient, and for temporal proximity to establish a prima facie showing of the necessary causal link, the temporal proximity between the employer's knowledge of the protected activity and the adverse employment action must be "very close." *Amsel*, 464 Fed. Appx. at 402, *Swanson*, 110 F.3d at 1188 n.3; *Tex. Parks & Wildlife Dep't v. Gallacher*, No. 03-14-00079-CV, 2015 WL 1026473, at *7 (Tex. App.—Austin Mar. 4, 2015, no pet.) (mem. op.). What time period is considered "very close" varies, but in the cited cases, two months was held to be insufficient to reasonably infer a causal link, while five days was held sufficient. *Compare Amsel*, 464 Fed. Appx. at 401-02 *and Gallacher*, 2015 WL 1026473, at *7 *with Evans*, 246 F.3d at 354. "[T]here is no hard-and-fast rule that any specified amount of time is too removed for an inference of causation. Especially where a defendant retaliates at the first opportunity that is presented." *San Antonio Water Sys. v. Nicholas*, 441 S.W.3d 382, 392-93 (Tex. App.—San Antonio 2013), *rev'd on other grounds*, 2015 WL 1873217 (Tex. Apr. 24, 2015) (internal citations omitted); *see also Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517,

529 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (noting proximity may establish causal connection when protected activity and adverse employment action are separated by weeks, as opposed to months and years).

In this case, Rockwood testified that she informed Sims, who was the person responsible for terminating her, about her accommodation request on September 3, 2009. Sims was also copied on Rockwood's email dated September 10, 2009, notifying Fritz that her recommended temporary accommodations of a stool and mat were never implemented. Sims sent Rockwood the notice of disciplinary action on October 9, 2009, and Rockwood was terminated on October 13, 2009. Viewing the evidence in the light most favorable to Rockwood, we hold this temporal proximity of approximately one month to be sufficient to raise a fact issue on the causation element of Rockwood's retaliatory discharge claim.[4] Accordingly, the trial court did not err in denying the Department's plea to the jurisdiction as to this claim.

## CONCLUSION

The portion of the trial court's order denying the Department's plea to the jurisdiction as to Rockwood's disability discrimination claim is reversed, and that claim is dismissed. The portion of the trial court's order denying the Department's plea to the jurisdiction as to Rockwood's retaliatory discharge and reasonable accommodation claims is affirmed. The cause is remanded to the trial court for further proceedings.

Sandee Bryan Marion, Chief Justice

---

[4] This opinion should not be read as addressing whether the Department could prevail on summary judgment in a more traditional context where the remaining burden-shifting steps of *McDonnell Douglas*s would be a factor, thereby enabling the court to consider the nondiscriminatory reasons the Department proffers for Rockwood's discharge. We simply hold under the scope and standard of review applicable in the context of this interlocutory appeal, the temporal proximity is sufficient to raise a fact issue on the causation element of Rockwood's prima facie case.