COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| BIBIANA FLORES, | § | No. 08-20-00050-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2015DCV0261) |

## **O P I N I O N**

Appellant, Bibiana Flores, appeals the trial court's order granting the plea to the jurisdiction and motion for summary judgment filed by Appellee, Texas Department of Criminal Justice. Appellant, a former employee of the Texas Department of Criminal Justice (TDCJ or Appellee), filed discrimination and retaliation claims under the Texas Commission on Human Rights Act (hereafter, TCHRA or the Act), *see generally* TEX.LAB.CODE ANN. §§ 21.051, 21.055, against Appellee after she was terminated in 2013 on the day she returned from authorized leave under the Family Medical Leave Act. Appellant's lawsuit alleges Appellee committed unlawful employment practices against her because of a disability in violation of the Texas Labor Code.

Appellee filed its initial plea to the jurisdiction in 2016 claiming sovereign immunity barred Appellant's claims against it because Appellant was unable to establish a prima facie case of either

her discrimination or retaliation claims under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Following the trial court's denial of Appellee's first plea to the jurisdiction, Appellee sought interlocutory review by this Court. We reversed the trial court's order as to Appellant's discrimination claim and rendered judgment dismissing the claim in *Texas Dep't of Crim. Justice v. Flores*, 555 S.W.3d 656, 670 (Tex.App.—El Paso 2018, no pet.)(hereafter, *Flores I*). In the same opinion, we affirmed the trial court's order with respect to the retaliation claim, finding Appellant "presented sufficient evidence to raise a fact issue to whether she was constructively discharged." *Id.* at 667.

Upon return to the trial court, Appellee filed a second plea to the jurisdiction accompanied by a motion for summary judgment approximately one year after our opinion in *Flores I*, urging updated case law and newly-discovered information defeats jurisdiction over Appellant's retaliation claim. In support of its plea and motion, Appellee attached an affidavit from a former warden who worked with Appellant. Appellant claims the affidavit violates the sham-affidavit rule because it directly contradicts a previous affidavit from the same witness which Appellant relied upon in opposing Appellee's initial plea. Additionally, Appellant relies upon the "law of the case" doctrine to support her position that because this Court previously determined issues of fact exist regarding Appellant's retaliation claim, Appellee is precluded from relitigating those same issues, to the extent they are merely being rehashed in Appellee's second plea and motion for summary judgment.

We disagree with Appellant and find she failed to meet her burden of pleading a prima facie case of retaliation under the TCHRA. The judgment of the trial court is affirmed.

## BACKGROUND

### Appellant's Employment with TDCJ

TDCJ hired Appellant as a correctional officer in 2002. In 2008, she was promoted to sergeant within the department.

Appellant alleges that in 2011, she injured her back and right leg at work while responding to a fight. Appellee posits she did not report the incident until mid-2012. She claims in mid-2012, after her pain worsened, doctors diagnosed her with a disability of "deteriorating lower back vertebrae discs." Shortly thereafter, Appellant claims she submitted a report to her supervisor, Major Arturo Falcon, informing him of her disability. Appellee disputes this contention, asserting she did not report the injury to anyone with TDCJ or file any type of worker's compensation claim.

After that, Appellant requested a shift change from one of the day shifts to the overnight shift so she could attend physical therapy for her back injury. Appellant claims her supervisors told her to "hold on" and "hang tight," and a shift change was forthcoming. However, the shift change did not occur. Appellee suggests this is because Appellant did not make the request to Warden Barbosa either in person or in writing, despite knowing the Warden also had the ability to change her shift. Appellant claimed her disability worsened as a result of not being able to attend physical therapy due to her work schedule.

In March of 2013, Appellant injured herself at home after a fall. On March 13, Appellant submitted a request under the Family and Medical Leave Act (FMLA) to take leave to treat the injury she sustained at home. On March 22, 2013, Appellant notified Appellee via TDCJ's human resources department, she had been diagnosed with sciatica. On April 18, 2013, Appellant notified TDCJ's human resources department she was diagnosed with spondylolysis and spondylolisthesis. Appellant was out on FMLA leave from March 13 to August 28, 2013. During her leave, Appellant claims she was repeatedly contacted by phone by Major Falcon and others about returning to work. She complained about this behavior to TDCJ's human resources department, who allegedly told

3

her they would inform the employees such conduct is prohibited under FMLA.

Appellant's physicians released her to work full duty without restrictions on August 28, 2013. When Appellant returned to work that day, Appellee issued five write-ups to her for incidents which allegedly occurred in March of 2013, shortly before her leave began. Appellant contests the basis of each write-up. The same day, Appellant resigned in lieu of termination. She contends her resignation was forced.

## Appellant's Lawsuit

Appellant filed her original petition in this cause on January 28, 2015. A copy of her original pleading is not part of the record on appeal. On May 31, 2016, she filed a first amended petition, which was the live pleading on file at all relevant times in this litigation. In it, Appellant asserted causes of action for disability discrimination and retaliation based upon TDCJ's refusal to provide her with "a reasonable accommodation in violation of section 21.128 of the Texas Labor Code[.]" Specifically, she claims her request for a schedule shift change to attend physical therapy was a reasonable accommodation which TDCJ refused to entertain.

## Appellee's First Plea to the Jurisdiction and Appellant's Response

Appellee filed its first Plea to the Jurisdiction on November 8, 2016. In it, Appellee argued Appellant's claims stemming from the refused schedule changes are time barred because the complained-of acts occurred in the summer of 2012, more than 180 days before Appellant executed her charge of discrimination. Appellee also claimed the trial court lacked jurisdiction over Appellant's claims based upon sovereign immunity.

Appellee argued, sovereign immunity eliminates a trial court's jurisdiction over claims against certain governmental defendants, unless the governmental unit consents to the lawsuit. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The Texas Legislature granted a limited

4

waiver of immunity for employment discrimination and retaliation claims. *See* TEX.LAB.CODE ANN. §§ 21.051(1), 21.055, 21.002(8)(D). For waiver of immunity to occur, the claimant must plead facts showing a prima facie case of the cause of action. Only when a defendant presents evidence negating facts of an essential element pleaded by the plaintiff is the plaintiff then required to produce evidence of the claim. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012).

Appellee alleged Appellant was unable to establish a prima facie case of disability discrimination on any of the essential elements of the claim.[1] Likewise, Appellee argued Appellant failed to plead or prove the essential elements of her retaliation claim because she did not engage in a protected activity, did not suffer an adverse employment action, and cannot show a causal connection between a protected activity or an adverse employment action.

In response, Appellant argued she adequately pleaded and made a prima facie case for retaliation. Specifically, she posits she engaged in a protected activity by (1) requesting a reasonable accommodation when she sought a shift change to attend physical therapy, (2) requested medical leave to attend physical therapy, and (3) complained of disability harassment while out on medical leave when certain TDCJ employees contacted her at home and demanded she return to work. She alleged her constructive termination upon return from medical leave was an adverse employment action. Finally, she stated a causal connection exists between her protected activities and the adverse employment action as evidenced by TDCJ's decision to issue five disciplinary write-ups to her on the day she returned from leave and using those disciplinaries as grounds to force her to resign in lieu of termination. One of the pieces of evidence Appellant relies

---

[1] Because we ultimately dismissed Appellant's disability discrimination claim in *Flores I*, our focus on the background facts centers around the parties' arguments on her retaliation claim.

upon in support of her response opposing the plea was an affidavit from Joel Barbosa, who served as a warden for TDCJ at the location where Appellant worked during the applicable time period of the litigation. In the affidavit, Barbosa testified TDCJ employs a progressive disciplinary system where incidents are written up and sorted by level of severity of the violation, ranging from level IV violations, least severe, to level I violations, which are more severe. In order to give employees adequate notice of a potential termination, Barbosa testified, "it is TDCJ policy not to issue multiple disciplinary write-ups to an employee all at once. For example, it would be uncommon to give an employee five separate write ups all at once; rather, for purposes of adhering to TDCJ's progressive disciplinary policy, a supervisor should issue one write up but with five instances. The employee hearing officer could then dismiss any lesser included violations at the hearing." Barbosa did not elaborate further on the disciplinary process in his affidavit.

The trial court denied Appellee's plea and Appellee filed a timely appeal to this Court.

## Our Opinion in *Flores I*

In *Flores I*, we reversed the decision of the trial court as to the discrimination claim, finding Flores failed to produce evidence of having a disability as it is defined under the TCHRA. *Flores I*, 555 S.W.3d at 666. We determined TDCJ satisfied its initial burden conclusively showing Flores was not disabled when she returned to work on August 28, 2013, because she was released to "regular/full duty" by her treating physician effective August 28, 2013, with no limitations or restrictions on the type of work she was able to do. *Id.* at 665. The burden then shifted to Flores to present evidence she was disabled, as the term is defined under the TCHRA, which includes disabilities that are "episodically symptomatic." *Id.* Flores presented evidence of her spondylolysis and spondylolisthesis in her lower back. *Id.* We determined she produced at least some evidence the back pain she experienced in the summer of 2013 during her medical leave limited a major

6

function and was therefore a "disability" under the TCHRA. *Id.* However, Flores was unable to produce evidence her condition was episodic, such that "it would continue to limit major life functions" in the future upon her full release to return to work. *Id.* She produced evidence she was at a higher risk of re-injury as a result of her condition, "but not that she would have any sort of regular episodic reoccurrence of what she experienced in the summer of 2013[.]" *Id.* at 666. Because no evidence raised a fact issue as to whether Flores had a disability at the time TDCJ allegedly took an adverse employment action against her, we sustained TDCJ's first issue and reversed the trial court's order denying TDCJ's plea to the jurisdiction on the disability claim. *Id.* at 666, 670.

However, we overruled TDCJ's second issue pertaining to Flores's retaliation claim and affirmed the trial court's order denying TDCJ's plea to the jurisdiction. *Flores I*, 555 S.W.3d at 670. In *Flores I*, TDCJ essentially conceded Flores produced evidence she engaged in a protected activity based on her request for an accommodation for her alleged disability—her request for a shift change to attend physical therapy—citing *Texas State Office of Admin. Hearings v. Birch*, No. 04-12-00681-CV, 2013 WL 3874473, at *23 (Tex.App.—San Antonio July 24, 2013, pet. denied)(mem. op.). Instead, TDCJ argued Flores produced no evidence that it took an adverse employment action against her, nor any causal connection between the protected activity and an allegedly-adverse employment action. *Flores I*, 555 S.W.3d at 667.

We first considered whether Flores presented sufficient evidence of constructive discharge to raise a fact issue on the adverse employment action element. *Id.* Citing a line of cases[2] recognizing an ultimatum to resign or else be terminated "may also be sufficient to raise a fact

---

[2] *Gardner v. Abbott*, 414 S.W.3d 369, 383 (Tex.App.—Austin 2013, no pet.); *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338-39 (5th Cir. 2014); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997); *Davis v. City of Grapevine*, 188 S.W.3d 748, 766 (Tex.App.—Fort Worth 2006, pet. denied).

issue regarding constructive discharge[,]" we determined Flores created a fact issue. *Id.* Her deposition testimony Major Thompson, one of her superiors, "told me that I either resigned or I was going to get fired for having all these disciplinaries[,]" and "I was basically told either resign, because it was better for me, or get fired[,]" was sufficient to create a fact issue as to whether she was constructively discharged. *Id.*

Additionally, we found Flores raised a fact issue on causation. Flores presented evidence that "TDCJ retaliated against her at its first chance when she returned from FMLA leave[,]" considering their investigations of the incidents underlying her disciplinary write-ups began on the day her leave started. *Flores I*, 555 S.W.3d at 669. Although "the latest date of any protected activity was March 13, 2013," and Flores's employment with TDCJ did not end until the date she returned from leave on August 28, 2013, the lack of any opportunity for TDCJ to undertake any action against her while she was on leave raised a fact issue as to whether TDCJ retaliated against her at its first opportunity, thereby creating a time proximity causal connection between the protected activity and the adverse employment action. *Id.* at 668-69. We likewise found Flores raised sufficient evidence to create a fact issue on the "but for" causation. *Id.* at 670. Specifically, Flores produced evidence disputing the validity of the charges that TDCJ claimed would have led to her termination. *Id.* Additionally, we found "TDCJ presented no conclusive evidence that it intended to terminate Flores. Instead, it claimed she resigned before the disciplinary process took its course." *Id.* "[W]ithout some conclusive evidence negating causation, Flores carried no burden to come forward with affirmative evidence establishing causation." *Id.*

**Appellee's Second Plea to the Jurisdiction and Motion for Summary Judgment**

Approximately one year after we issued our decision in *Flores I*, Appellee filed its second plea to the jurisdiction and motion for summary judgment. Appellee's second plea to the

8

jurisdiction also centers on the trial court's lack of jurisdiction due to sovereign immunity. In addition to the plea, TDCJ filed no-evidence and traditional summary judgment motions which also urge dismissal for lack of subject matter jurisdiction. For clarity's sake, we refer to Appellee's second plea to the jurisdiction and motions for summary judgment simply as the "second plea."

In its second plea, Appellee urges Appellant's request for a schedule shift change is not an activity protected by the TCHRA.[3] Appellee cites *Texas Dep't of Transp. v. Lara*, 577 S.W.3d 641, 650-51 (Tex.App.—Austin 2019), *aff'd in relevant part*, 625 S.W.3d 46 (Tex. 2021)(hereafter, *Lara I*). There, the Austin Court of Appeals reasoned although the Americans with Disabilities Act (hereafter, ADA) should guide how courts should interpret the TCHRA, the analogous retaliation provision of the TCHRA is significantly limited in scope when compared to the ADA and does not include a broader category of protected activities for "the exercise of rights otherwise granted by the statute[.]" *Lara I*, 577 S.W.3d at 650-51. The *Lara I* court reasoned when the Texas Legislature amended the TCHRA to be "substantially equivalent to" the ADA, it expressly declined to broaden the retaliation protections afforded under the TCHRA to reflect the same language afforded to claimants under the ADA. *Id.* at 651. Because the Legislature did not make this change when it could have, the Austin Court reasoned it did not intend to broaden the retaliation protections to be as expansive as those afforded under the ADA. *Id.*

Appellee also discussed the *Lara I* court's distinction between the facts it was presented with and two cases out of the San Antonio Court of Appeals where that court held an accommodation request *was* a protected activity under the TCHRA. *See generally Texas Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147 156-57 (Tex.App.—San Antonio 2015, no pet.),

---

[3] Appellee also argued taking leave under FMLA is not a protected activity under TCHRA.

*disapproved of on other grounds by Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755 (Tex. 2018); *Birch*, 2013 WL 3874473, at 23. In each of these cases, the San Antonio court construed Section 21.055 as including a request for accommodation as a protected activity because the ADA deemed it was.[4] *Lara I*, 577 S.W.3d at 651-52. For this reason, the Austin court disagreed with the San Antonio court's holding. *Id.* at 652. Appellee also notes the cases are distinguishable from this case because the temporal proximity of the termination to the allegedly-protected activity was much closer than the facts present here. *Id.*

Appellee's second plea also reasserts Flores "fails to show even circumstantial evidence of a material adverse employment action." This portion of Appellee's argument largely mirrors the same issue raised in the initial plea. In short, Appellee claimed the only evidence of constructive discharge offered by Appellant was her own subjective belief she felt she had to resign knowing termination was a possibility, which Appellee argues is insufficient under the law.

Finally, Appellee again claims Flores failed to make a prima facie showing of the causal element between the allegedly-protected activity and the allegedly-adverse employment action. Appellee relies on the temporal-proximity argument of causation, as well as but-for causation. *See Alamo Heights*, 544 S.W.3d at 782. In setting out its argument on causation and whether TDCJ deviated from established policies, Appellee relies in part on an affidavit by Warden Barbosa addressing, in part, TDCJ's policy (or lack thereof) regarding issuing multiple disciplinary write-ups to an employee in one sitting (hereafter, the second affidavit). The second affidavit states, "Although it may be uncommon for TDCJ to issue five disciplinaries at one time, it is not against

---

[4] The court in *Rockwood* did not explicitly hold that an accommodation case was a protected activity under the retaliation portion of the TCHRA. *See Rockwood*, 468 S.W.3d at 156-57. Rather, it proceeded under the assumption that the accommodation request was a protected activity, and it appears neither party took issue with the court's position. *See id.*

10

any policy."

Appellee argues even if Appellant met her initial prima facie burden to show retaliation, Appellee likewise met its burden of producing evidence of a legitimate, non-discriminatory purpose for terminating Appellant. Evidence produced regarding TDCJ's concern Appellant was engaged in a relationship with an offender is, according to Appellee, an independent reason for which Appellant could have been terminated, had she not resigned. Further, Appellee claims Appellant has failed to raise a fact issue TDCJ's legitimate, non-retaliatory reason for terminating Appellant is a pretext for discrimination.

**Appellant's Response to the Second Plea and Motion to Strike**

In response, Appellant filed a motion to strike Appellee's second plea[5] and Barbosa's second affidavit. The arguments Appellant raised in her motion to strike are essentially identical to the issues she raises in this appeal.

First, Appellant claims the "law of the case" doctrine prevents Appellee from filing a second plea to the jurisdiction because we previously determined, in *Flores I*, that issues of fact exist regarding the requisite elements of Appellant's retaliation claim. First, Appellant argues her complaint to the human resources department with TDCJ regarding the alleged interference with her FMLA leave was a "complaint . . . opposing Employer TDCJ's discriminatory practice of interfering with Employee Flores's rights under the TCHRA[.]" Appellant claims the protected activity was not requesting leave or an accommodation via a shift change; rather, she claims the protected activity was "making a good-faith complaint to [TDCJ's human resources department] opposing [TDCJ's] discriminatory practice of interfering with Employee Flores' rights under the TCHRA[.]" Appellant also argues a different interpretation of the Austin Court of Appeals'

---

[5] We treat the motion to strike Appellee's second plea as Appellant's response to the second plea.

opinion in *Lara I* and its interpretation of the cases out of the San Antonio Court of Appeals.

Much of the remainder of Appellant's response to the second plea discuss why it should be struck as re-urging arguments regarding constructive termination and the causal connection requirement which we already analyzed and found fact issues present in *Flores I*. Additionally, Appellant suggests the second plea should be struck because we found in *Flores I* genuine issues of material fact exist regarding whether TDCJ had a legitimate, non-discriminatory reason for disciplining and constructively terminating her.

Appellant also moved to strike Barbosa's second affidavit under the sham-affidavit rule. Because we do not reach the sham-affidavit issue on this appeal, we will not devote excessive ink to it here. Suffice to say, Appellant claims the second Barbosa affidavit Appellee relies upon in its second plea violates the sham-affidavit rule because, as Appellant argues, it directly contradicts Barbosa's earlier affidavit which stated issuing multiple disciplinary write-ups to an employee at one time, as Appellant received, was a violation of TDCJ's typical disciplinary policy and procedure.

The trial court denied Appellant's motions to strike Barbosa's second affidavit and Appellee's second plea. It granted Appellee's second plea and motion for summary judgment on unspecified grounds. This appeal followed.

## DISCUSSION

Appellant raised fifteen issues on appeal,[6] which can be consolidated into two areas of inquiry requiring our attention, in this order:

---

[6] Appellant's issues primarily deal with questioning whether the trial court erred in granting Appellee's second plea and motion for summary judgment when this Court previously held that Appellant raised issues of material fact on several elements of her retaliation claim.

12

1. Whether the trial court erred in granting Appellee's plea to the jurisdiction and motion for summary judgment (Appellant's Issues One, and Three through Fifteen); and

2. Whether the trial court abused its discretion by denying Appellant's motion to strike Warden Barbosa's affidavit (Appellant's Issue Two).

### *Standard of Review and Applicable Law*

### **Pleas to the Jurisdiction**

State agencies, like TDCJ, enjoy sovereign immunity from lawsuits, except where the Legislature waives the immunity. *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). "[S]overeign immunity deprives a trial court of subject matter jurisdiction." *Flores I*, 555 S.W.3d at 661 (*citing Texas Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). A limited waiver of immunity exists for claims brought against governmental units under the Labor Code. *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 636. The waiver extends only so far as "where the plaintiff actually alleges a violation of the [Labor Code] by pleading facts that state a claim thereunder." *Id.* at 636. The plaintiff must plead facts stating a prima facie case; otherwise, immunity is not waived. *Id.*

Defendants challenging subject matter jurisdiction do so through a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26. The plea can attack both the facts as pleaded as well as the existence of jurisdictional facts by attaching evidence to the plea. *Id.* at 226-27. "When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties." *Flores I*, 555 S.W.3d at 661 (*citing Miranda*, 133 S.W.3d at 226). "If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). "If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder." *Id.* "'This standard

mirrors our review of summary judgments' where the reviewing court takes as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor." *Flores I*, 555 S.W.3d at 661 (*quoting Heinrich*, 284 S.W.3d at 378). For this reason, challenges to subject matter jurisdiction may also be brought by summary judgment motion. *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 793 (Tex.App.—Houston [1st Dist.] 2012, no pet.)(*citing Bland Indep. School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

Whether a trial court has subject matter jurisdiction over a case is an issue we review *de novo*. *Miranda*, 133 S.W.3d at 226-27.

**Retaliation under the TCHRA**

Appellant contends TDCJ retaliated against her for engaging in a protected activity. *See* TEX.LAB.CODE ANN. § 21.055 (making actionable retaliation for an employee engaging in protected activities). "To establish a prima facie case for retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action." *Flores I*, 555 S.W.3d at 666. The TCHRA defines protected activities as: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. TEX.LAB.CODE ANN. § 21.055.

Once an employee establishes a prima facie case of retaliation, "a rebuttable presumption of [retaliation] arises[.]" *Alamo Heights*, 544 S.W.3d at 782 (noting that the *McDonnel Douglas* burden-shifting steps in discrimination claims also apply to retaliation claims). However, the employer may be able to defeat the presumption "by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action." *Id.* If the employer produces such

evidence, the employee must then produce "evidence that the employer's stated reason is false and a pretext" for retaliation. *Id.* At all times, the burden of persuasion showing the existence of subject matter jurisdiction lies with the employee. *Id.*

*Analysis*

We consider first the issue of whether a request for accommodation is considered a protected activity under the TCHRA. Appellant argues Appellees are rehashing the same arguments in their second plea and motion for summary judgment as they did in their initial plea, and the law of the case doctrine bars reconsideration of these issues.

The "law of the case" doctrine holds that questions of law decided in one appeal govern the case throughout subsequent stages of litigation, including later appeals. *Justice Bail Bonds v. Samaniego,* 68 S.W.3d 811, 813 (Tex.App.—El Paso 2001, pet. denied). Application of this doctrine is discretionary and is "merely a practice to ensure consistency in court decisions" and "not a limit to the power of courts." *Telles v. Samaniego,* No. 08–02–00234–CV, 2003 WL 22254711, at *4 (Tex.App.—El Paso Sept. 30, 2003, no pet.)(mem. op.). The doctrine does not apply "if the issues or facts presented in successive appeals are not substantially the same as those involved in the first decision" or if "the prior appellate ruling is clearly erroneous." *Tomaszewicz v. Wiman,* No. 08–00–00034–CV, 2002 WL 397003, at *2 (Tex.App.—El Paso Mar. 14, 2002, no pet.)(not designated for publication).

Although Appellees did argue a request for accommodation was not a protected activity in their first plea, that issue was not decided by this Court on appeal in *Flores I. See Flores I*, 555 S.W.3d at 666-67. Rather, as mentioned previously, TDCJ cited *Birch*, 2013 WL 3874473, at *23 for the proposition Flores engaged in a protected activity based on her request for an

accommodation.[7] Accordingly, we did not rule on whether such a request was a protected activity, and instead assumed for purposes of our analysis Flores engaged in a protected activity since TDCJ did not raise it as a point of error in *Flores I.* Thus, to the extent it might apply to other issues in this appeal because this element was not raised or considered in *Flores I*, the law of the case doctrine is inapplicable to preclude our review of the element now. *See Tomaszewicz*, 2002 WL 397003, at *3; *see also Pitman v. Lightfoot*, 937 S.W.2d 496, 512-13 (Tex.App.—San Antonio 1996, writ denied)(law of the case does not necessarily apply when issues or facts presented in successive appeals are not substantially the same)(*citing Barrows v. Ezer*, 624 S.W.2d 613, 617 (Tex.App.—Houston [14th Dist.] 1981, no writ)).

Moreover, since *Flores I* was issued, the issue of whether a request for accommodation is a protected activity under the TCHRA was recently decided by the Texas Supreme Court when it granted review of the Austin Court's decision in *Lara I. See Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58-60 (Tex. 2021)(hereafter, *Lara II*). Lara was an employee of the Texas Department of Transportation (TxDOT) who underwent surgery during his employment with the department. *Id.* at 49. In the time leading up to and following the surgery, he exhausted his vacation and sick leave, and submitted forms requesting benefits under FMLA and the state employees' sick-leave pool. *Id.* He was approved for unpaid leave under the FMLA. *Id.* While out on leave, Lara twice sought an extension of leave. *Id.* After the first request, Lara was granted paid leave via the sick-

---

[7] *Birch* cites to a case out of this Court for the proposition that requesting a reasonable accommodation for a disability is protected activity under the TCHRA's retaliation section. *Birch*, 2013 WL 3874473, at *23 (*citing Hagood v. County of El Paso*, 408 S.W.3d 515, 526-27 (Tex.App.—El Paso 2013, no pet.). However, in *Hagood*, we did not undertake an analysis of whether an accommodation request is a protected activity from retaliation. *See Hagood*, 408 S.W.3d at 527. Rather, we assumed without deciding Hagood met his initial prima facie burden, and found even if he had, "the County presented sufficient evidence of a legitimate non-retaliatory reason for its adverse employment action." *Id.* ("Assuming without deciding that the three-month time period between Hagood filing his claim and his termination is sufficient to meet Hagood's initial *prima facie* burden, we have only jumped the first hurdle of the *McDonnell Douglas* analysis."). In that case, Hagood failed to meet his ultimate burden of presenting evidence creating a fact issue on the County's reason for his termination, and we determined summary judgment on his retaliation claim was appropriate. *Id.* at 527-28.

leave pool. *Id.* In the second request, Lara's physician indicated he would remain incapacitated for roughly another four months. *Id.* TxDOT granted Lara additional paid leave from the sick-leave pool for another two months from the date of his second request, which was the maximum permitted by state law. *Id.* A week before his paid leave ended, TxDOT informed Lara he would be "administratively separated" from the agency at the end of his paid leave period and replaced with another full-time employee. *Id.*

Lara sued TxDOT under the TCHRA for disability discrimination and retaliation. *Lara II*, 625 S.W.3d at 50-51. His retaliation claim was based on TxDOT's alleged retaliation against him "'for making a request for a reasonable accommodation'" based on his request for extended medical leave or leave without pay. *Id.* at 51. TxDOT filed a plea to the jurisdiction and motion for summary judgment claiming sovereign immunity, which the trial court denied without explanation. *Id.* As it pertains to the retaliation claim, the Austin Court of Appeals determined Lara's retaliation claim under Section 21.055 should have been dismissed because Lara failed to produce evidence that he engaged in a protected activity as it is defined under the TCHRA. *Id.* Lara countered that his request for leave without pay or another accommodation was a protected activity under the TCHRA, citing federal court decisions and a decision from another Texas court of appeals. *Id.* The Austin court rejected Lara's argument, citing differences in the language of the TCHRA as compared to the ADA, and because Lara could not prove the causal element based upon the four-month lapse between Lara's first request for leave and his date of termination. *Id.*

The Texas Supreme Court agreed with the ultimate outcome of the Austin Court of Appeals' decision on the retaliation claim, but for slightly different reasoning. *Lara II*, 625 S.W.3d at 57-58. Our sister court "focus[ed] on statutory differences between Section 21.055 and ADA § 12203, . . . reason[ing] that although an accommodation request may be sufficient to invoke the

17

protection of the ADA's retaliation provision[,] it is not opposition to a discriminatory practice under Texas' narrower statute." *Id.* at 58.[8] The Texas Supreme Court declined to sweep with so broad a brush, noting instead "we assume that an accommodation request could, *in some circumstances*, count as opposition to a discriminatory practice." *Id.* at 59. However, consistent with federal case law and recent Supreme Court precedent on the subject, "to invoke the protections of Section 21.055, the conduct relied on by the employee 'must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue.'" *Id.* (*citing Alamo Heights*, 544 S.W.3d at 786).

The Court in *Lara II* references two other Supreme Court cases addressing the same issue. *Lara II*, 625 S.W.3d at 59-60 (*discussing Alamo Heights*, 544 S.W.3d at 755; and *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 572 (Tex. 2017)). In *Alamo Heights*, a gym teacher filed suit for same-sex harassment and retaliation after she was terminated for what the district claimed as poor performance. *Alamo Heights*, 544 S.W.3d at 769. There, the plaintiff argued that the three complaints she made to the school regarding another teacher's behavior toward her was sufficient to invoke the protections of Section 21.055. *Id.* at 786. Although "'fil[ing] a complaint' [is] expressly listed in Section 21.055" as an action from which one can be protected from retaliation, the Supreme Court found the specific complaints the plaintiff in *Alamo Heights* made were insufficient to make her prima facie case on the first element of a retaliation claim. *See Lara II*, 625 S.W.3d at 60 (*quoting* TEX.LAB.CODE ANN. § 21.005(2)-(3))(*discussing Alamo Heights*, 544 S.W.3d at 786-87)*.* The teacher's complaints largely dealt with general mistreatment of her by another coach, and nothing in the complaints indicated she felt the mistreatment was the result of

---

[8] The Texas Supreme Court addressed only this first element and not the court of appeals' determination Lara also failed to prove the causal element.

her gender or other protected trait. *Alamo Heights*, 544 S.W.3d at 786. The Supreme Court explained "complaining only of 'harassment,' 'hostile environment,' 'discrimination,' or 'bullying' is not enough." *Id.* at 786-87. "The employee must alert the employer to an allegation of discrimination, and no reasonable jury could conclude that [the teacher's] letter alerted the principal to [her] belief that the conduct she complained about constituted sex-based discrimination." *Lara II*, 625 S.W.3d at 60 (*citing Alamo Heights*, 544 S.W.3d at 787).

*Lara II* also references *Rincones*, where the plaintiff alleged racial discrimination and retaliation after he was fired following a failed drug test. *Lara II*, 625 S.W.3d at 60 (*citing Rincones*, 520 S.W.3d at 585). There, the plaintiff claimed to have invoked Section 21.055 when he asked a human-resources representative why another employee [who was white] was still employed following a failed drug test, but he was being terminated. *Rincones*, 520 S.W.3d at 585. The Supreme Court found that the plaintiff's statement about the other employee—who was referenced by name, and whose race was not brought up when the complaint was made—was not sufficient to have alerted his employer of his belief that discrimination was occurring. *Id.* at 586.

Consistent with its prior decisions in *Alamo Heights* and *Rincones*, the Supreme Court found for Lara to have invoked Section 21.055, one of his accommodation requests "must have alerted TxDOT to Lara's belief that disability discrimination was at issue." *Lara II*, 625 S.W.3d at 60. Lara claimed his multiple calls to TxDOT superiors, his timely-filed FMLA paperwork, and his conversations with TxDOT supervisors about leave without pay was sufficient. *Id.* But the Supreme Court felt differently, holding "there is no evidence that Lara alerted TxDOT to the possibility of discrimination in any of these communications. Indeed, the only discriminatory conduct by TxDOT that Lara alleges even now is his eventual termination." *Id.* Because Lara produced no evidence he opposed a discriminatory practice by TxDOT, Lara failed to make a

prima facie case of retaliation under Section 21.055, and the Texas Supreme Court affirmed the portion of the court of appeals' judgment dismissing his retaliation claim. *Id.* at 61.

We find the facts of this case analogous to those in *Lara*. However, before we address the facts pertinent to the retaliation claim inquiry, we find it necessary to address *which* facts Appellant's pleadings reference as pertaining to the retaliation claim. Appellant's first amended petition alleges:

> Employer TDCJ was on notice of Employee Flores's medical condition when Employer TDCJ approved Employee Flores' intermittent requests for medical leave during 2012 and 2013. On or about summer 2012, Employer TDCJ also received multiple requests for a reasonable accommodation, in the form of a schedule modification, when Employee Flores asked Major Falcon and Captain Aguilera to be moved from the morning shift, 1st shift, to the graveyard shift, 3rd shift, so that Employee Flores could attend afternoon therapy sessions ordered by her doctor . . . . Major Falcon and Captain Aguilera, knowing that Employee Flores needed to attend the therapy sessions to treat her slipped discs, would tell Employee Flores to 'hold tight' and that 'everyone will rotate soon.' Employer TDCJ never modified Employee Flores's schedule. Because Employer TDCJ never rotated Employee Flores out from 1st shift to 3rd shift, Employee Flores was unable to attend the afternoon therapy sessions to treat her slipped discs, and her condition deteriorated. In March of 2013, Employer TDCJ received a request from Employee Flores to take medical leave so that Employee Flores could attend the afternoon therapy sessions ordered by her doctor to treat her slipped discs, nearly a year after she requested a reasonable accommodation in the form of a schedule modification so that she could attend such sessions . . . . TDCJ constructively discharged Employee Flores in retaliation for requesting a reasonable accommodation. [Internal numbering omitted].

The only allegations regarding an accommodation request, per Appellant's pleadings, involve her request for a shift change to attend physical therapy. Unlike her response to Appellee's second plea and her brief in this appeal, where she appears to also allege her request for medical leave is an accommodation request, her pleadings do not reflect these allegations. Furthermore, her pleadings remain silent regarding her human resources complaint about being contacted while on leave to return to work as being a basis for her retaliation claim.

20

In reviewing the propriety of granting a plea to the jurisdiction, it is the plaintiff who bears the burden to allege facts demonstrating the trial court's jurisdiction in a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). While we, and the trial court, "must construe the plaintiff's pleadings liberally in favor of jurisdiction," *Guadalupe-Blanco River Authority v. Pitonyak*, 84 S.W.3d 326, 333 (Tex.App.—Corpus Christi 2002, no pet.)(*citing Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804 (Tex. 1989)), we will not read facts or allegations into the pleadings that are not present. In considering the allegations in Appellant's first amended petition, as a whole, it is apparent her retaliation claim is based on her request for a schedule change, which she claims is a reasonable accommodation request based on her disability. *See* TEX.R.CIV.P. 45(b)(fair notice of a party's claims is determined by the allegations as a whole).

Appellant claims she made a request to her supervisors for a transfer from a daytime shift to the graveyard shift so she could attend physical therapy. In response, Appellant was told to "hold on" and "hang tight" and a shift change was coming soon. The requested shift change never occurred. That is the extent of the facts alleged by Appellant regarding the requested accommodation, and the extent of evidence she presented on the same topic. Nothing in the alleged schedule-change requests alerts TDCJ to the possibility that Appellant believed she was being discriminated against for an alleged disability. There is no evidence Appellant, at any time in making her requests, mentioned to TDCJ her requests for a schedule change were not honored because she suffered from a disability. Whether TDCJ knew Appellant suffered from a disability at the time the request was made, if in fact she did, is immaterial to our analysis of whether she engaged in a protected activity by making an accommodation request; what matters is whether the accommodation request notified TDCJ she believed she was being discriminated against for that

disability. *Lara II*, 625 S.W.3d at 60. Plaintiff has neither pleaded facts nor produced evidence that such notification was made.

Furthermore, even if we consider the unpled allegations Appellant now raises—her request to take FMLA leave is an accommodation request, or the complaint she filed while on FMLA leave was a protected activity under the TCHRA—Appellant has not satisfied her initial burden. No facts are pleaded, nor evidence provided, indicating Appellant's request to take medical leave "alert[ed] [TDCJ] to the employee's reasonable belief that unlawful discrimination [was] at issue." *See Alamo Heights*, 544 S.W.3d at 786; *Lara II*, 625 S.W.3d at 60. Likewise, Appellant has not alleged facts or produced evidence the complaint she filed while on medical leave put TDCJ on notice she believed she was being discriminated against of her alleged disability. Instead, her complaint related to prohibitions against employers demanding employees return to work while on leave under the FMLA.

Under any theory raised at any point in the litigation, whether contained in Appellant's pleadings or not, she has not made a prima facie case of her retaliation claim. None of the actions Appellant took which she claims constitute protected activity under the TCHRA satisfy the Act's requirement that the activity alerted the employer to the possibility of discrimination. *See Lara II*, 625 S.W.3d at 60; *Alamo Heights*, 544 S.W.3d at 786. Because Appellant failed to meet her initial prima facie burden to show a claim for retaliation, she has failed to affirmatively demonstrate the trial court had subject matter jurisdiction over the suit. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446. Thus, the trial court properly dismissed her suit.

We overrule Appellant's first issue, and third through fifteenth issues.

Because Appellant's second issue regarding Warden Barbosa's affidavit does not involve evidence relied upon by either party in determining whether a protected activity occurred, we do

not reach it in this appeal.

## CONCLUSION

Appellant failed to meet her initial prima facie burden to plead facts showing a claim for retaliation because none of the facts pleaded, nor evidence relied upon, satisfy the Act's requirement that the activity must alert the employer to the possibility of discrimination. *See Lara II*, 625 S.W.3d at 60; *Alamo Heights*, 544 S.W.3d at 786. Further, as an issue not previously considered on appeal in this case, the law of the case doctrine does not preclude our review of it in this appeal.

We decline to consider Appellant's second issue regarding whether the trial court should have struck Warden Barbosa's affidavit under the sham-affidavit rule because neither party relied on it in analyzing whether Appellant's request for accommodation was a protected activity.

Having overruled Appellant's Issues One, and Three through Fifteen, and declining to reach Appellant's Issue Two, the judgment of the trial court dismissing Appellant's claims is affirmed.

September 28, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.